John O. Farley                                      *Return Date:*  _____, *2016*
Michael T. Jones (*pro hac vice*)                   _____ *A.M./P.M.*
Jordan D. Weiss
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY
Tel:  212.459.7318
Fax:  212.355.3333
                                                                     .
*Counsel for Diane Currier*
*(Executor of the Estate of Richard Floor)*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LYONDELL CHEMICAL | ) | Case No.:  09-10023 (REG) |
| COMPANY, et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

_____

| | | |
|---|---|---|
| | ) | |
| EDWARD S. WEISFELNER, AS | ) | |
| LITIGATION TRUSTEE OF THE LB | ) | Adv. Proceeding No.: 09-1375 (REG) |
| LITIGATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORAL ARGUMENT** |
| | ) | **REQUESTED** |
| LEONARD BLAVATNIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

**DIANE CURRIER'S (EXECUTOR OF THE ESTATE OF RICHARD FLOOR)**
**<u>MOTION FOR LEAVE TO APPEAL</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .................................................................................................................7

QUESTION PRESENTED .................................................................................................10

ARGUMENT ...................................................................................................................10

I.     The Three § 1292(b) Factors Justify Interlocutory Review...............................11

     A.     Whether Events Occurring Only After the 90-Day Deadline for Moving to Substitute Can Constitute "Excusable Neglect" Is a Controlling Issue of Law That Warrants Appellate Review..........................................................................11

     B.     Substantial Grounds For a Difference of Opinion Exist Because the Bankruptcy Court's Order Contradicts Binding Second Circuit Authority. ...........................13

          1.     The Bankruptcy Court Ignored Binding Second Circuit Authority Requiring a "Hard Line" Approach to Determining Excusable Neglect...15

               a.     Under Well-Settled Second Circuit Law, Events Occurring After the Relevant Deadline Cannot Form the Basis of a Finding of Excusable Neglect.......................................................................16

               b.     The Only Excuses Relied on by the Bankruptcy Court Occurred *After* the Deadline Passed. ..........................................17

          2.     The Bases Underlying the Court's Findings Cannot Be Supported. .........20

     C.     Resolution of These Controlling Issues of Law Will Materially Advance the Ultimate Termination of This Litigation, Because a Correct Application of Rule 25(a) Requires Dismissal of the Claims Against the Estate ................................23

II.     Exceptional Circumstances Justify Interlocutory Review to Prevent Further Delay and Prejudice to the Estate....................................................................................25

CONCLUSION.................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Jundi v. Estate of Rockefeller*,
  757 F. Supp. 206 (W.D.N.Y. 1990) ...............................................................12, 25

*Anderson v. Yungkau*,
  329 U.S. 482 (1947) ........................................................................................2

*Burka v. Aetna Life Ins. Co.*,
  894 F. Supp. 28 (D.D.C. 1995) .......................................................................12

*Canfield v. Van Atta Buick/GMC Truck, Inc.*,
  127 F.3d 248 (2d Cir. 1997) ...........................................................................16

*Caruso v. City of New York*,
  No. 06-5997, 2013 WL 6569783 (S.D.N.Y. Dec. 13, 2012) ...........................26

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1 (1980) ............................................................................................2

*In re Fairfield Sentry Ltd. Litig.*,
  458 B.R. 665 (S.D.N.Y. 2011) ........................................................................13

*Flo & Eddie, Inc v. Sirius XM Radio Inc.*,
  No. 13-5784, 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ..............................13

*Harp v. City of N.Y.*,
  No. 01-6604, 2008 U.S. Dist. LEXIS 58023 (S.D.N.Y. July 30, 2008) ..........18

*In re Hawker Beechcraft, Inc.*,
  No. 12-11873, 2013 WL 6673607 (S.D.N.Y. Dec. 18, 2013) ..........................23

*Henny v. Comm'r of Soc. Sec.*,
  No. 15-629, 2015 WL 9659981 (S.D.N.Y. Dec. 17, 2015) ..........................15, 23

*Jackson v. Caribbean Cruise Line, Inc.*,
  88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...............................................................24

*Jones Inlet Marina, Inc. v. Inglima*,
  204 F.R.D. 238 (E.D.N.Y. 2001) .....................................................................17

*Keating v. Leviton Mfg. Co., Inc.*,
  No. 06-6027, 2009 WL 234654 (E.D.N.Y. Jan. 30, 2009) ..............................14

*In re Lehman Bros. Holdings, Inc.*
   No. 13-2211, 2014 WL 3408574 (S.D.N.Y. June 30, 2014) ..................................................25

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96-1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)....................................................12

*Merisier v. Comm'r, Soc. Sec. Admin.*,
   No. 11-1168, 2012 WL 3230449 (E.D.N.Y. Aug. 6, 2012) ...................................................14

*Mich. Self-Insurers' Sec. Fund v. DPH Holdings, Corp. (In re DPH Holdings, Inc.)*,
   434 B.R. 77 (S.D.N.Y. 2010)..............................................................................6, 16, 17, 19

*Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*,
   No. 02-6274, 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003)...........................................10, 25

*Mwani v. Bin Laden*,
   302 F.R.D. 22 (D.D.C. 2014)..........................................................................6, 17, 18

*Nauman v. Rensselaer Polytechnic Inst.*,
   No. 07-0740, 2010 WL 1257876 (N.D.N.Y. Mar. 26, 2010) ................................................14

*Nicosia v. United States*,
   No. 11-5069, 2014 WL 2957496 (E.D.N.Y. July 1, 2014)....................................................14

*Padilla v. Maersk*,
   721 F.3d 77 (2d Cir. 2013)....................................................................................4, 5, 15, 23

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*,
   507 U.S. 380 (1993)............................................................................................4, 12, 15, 22

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ...............................................................................................24

*Rodgers v. City of N.Y.*,
   No. 05-5521, 2006 WL 2943621 (E.D.N.Y. Sept. 6, 2006) .................................................14

*Russell v. City of Milwaukee*,
   338 F.3d 662 (7th Cir. 2003) ...............................................................................................16

*Silivanch v. Celebrity Cruise, Inc.*,
   333 F.3d 355 (2d Cir. 2003)..............................................................4, 5, 12, 14-16, 19

*Smith v. Doe*,
   No. 08-10437, 2010 WL 1404099 (S.D.N.Y. Jan. 25, 2010) ...............................................14

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    690 F. Supp. 170 (S.D.N.Y. 1987)......................................................................26

*Unicorn Tales, Inc. v. Banerjee*,
    138 F.3d 467 (2d Cir. 1998)..............................................6, 15, 17, 20, 22

*United States v. Gable*,
    217 F. Supp. 82 (D. Conn. 1963).....................................................................12

*W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*,
    138 F. Supp. 2d 1015 (W.D. Tenn. 2000)........................................................27

*Williams v. KFC Nat. Mgmt. Co.*,
    391 F.3d 411 (2d Cir. 2004).......................................................3, 4, 16, 17, 19

*Zakrzewska v. The New Sch.*,
    598 F. Supp. 2d 426 (S.D.N.Y. 2009)..............................................................24

**Statutes**

28 U.S.C. § 158(a)(3)............................................................................................1, 10

28 U.S.C. § 1292(b) .................................................................... 3, 7, 10-13, 23

**Federal Rules**

Fed. R. Civ. P. 6............................................... 1, 3, 4, 6, 11, 12, 14-18, 20, 22

Fed. R. Civ. P. 12 ..................................................................................................7

Fed. R. Civ. P. 25 ....................................................... 1-15, 17, 18, 22, 23

Fed. R. App. P. 4.........................................................................................10, 12

Fed. R. Bankr. P. 7025.................................................................................10, 13

Fed. R. Bankr. P. 9006.......................................................................................11

**Other Authorities**

16 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 3930
    (3d ed. 1998)..................................................................................................24

N.Y. Rules of Prof'l Conduct R. 1.2(e) ..............................................................9, 22

Diane Currier, as Executor of the Estate of Richard Floor ("the Estate"), seeks interlocutory review pursuant to 28 U.S.C. § 158(a)(3) of the Bankruptcy Court's Order (the "Order") erroneously: (a) granting the Trustee's untimely motion to extend the 90-day time limit imposed by Rule 25(a) of the Federal Rules of Civil Procedure ("Rule 25(a)") to move to substitute the Estate as a party (the "Trustee's Motion");[1] and (b) denying the Estate's motion to dismiss for failure to satisfy that deadline, pursuant to Rules 6(b)(1)(B) and 25(a) (the "Estate's Motion").

## PRELIMINARY STATEMENT

Justice demands an immediate appeal.  As a consequence of the Bankruptcy Court's errors, the Estate will be forced to defend claims from which it is exempt under a line of Second Circuit authority stretching back nearly two decades.  That is not necessarily unique to this order. But this case presents extraordinary circumstances, because the Bankruptcy Court waited almost five years to rule on the subject motions.

Having endured a five-year delay, during which the Estate was fully distributed, it would be unfair to require the Estate and Mr. Floor's heirs to stay in limbo for the additional years it will take for this matter to be finally resolved and then subject to appellate review.  Moreover, the effect on the Estate and Mr. Floor's heirs of this delay is amplified by the fact that Mr. Floor's D&O insurance carrier has filed a lawsuit in the Netherlands against the Estate and others seeking a declaration that the insurer is not obliged to reimburse any judgment or settlement amount, but only to advance defense costs.  That proceeding has been stayed pending the outcome of the underlying adversary proceeding.

Thus, absent this appeal, Mr. Floor's heirs would spend the next several years, as they have the past several years, laboring under a cloud of uncertainty.  There is no reason that those

---

[1] The term "Trustee" shall refer to Plaintiff Edward S. Weisfelner, as Litigation Trustee of the LB Litigation Trust.

innocent third parties should be forced to continue to confront the prospect that at some distant time they might be called on to give back the assets of an estate long since distributed.[2]

The law recognizes the unique burdens borne by estates which have been fully distributed, but nonetheless are left to ponder whether a legal proceeding will impose liability on them, and the decedent's heirs, in the future.  For that reason, the law permits courts to extinguish a moving party's rights under Rule 25(a) solely in favor of finality for third-party estates.[3]  Surely that same principle justifies the far less imposing remedy of immediate appellate review.

In other words, "extraordinary circumstances" exist, justifying immediate appellate review.

There is, of course, an "historic federal policy against piecemeal appeals."  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (internal quotation marks omitted).  That policy is animated by a desire to prevent underlying matters from grinding to a halt while interlocutory appeals are considered.  But that is not an issue here.  The Estate will not seek and has not sought a stay of the underlying matter pending appeal.  This Motion affects only the Estate and no other Defendant.  The Estate and the other parties will continue to litigate the

---

[2] The Bankruptcy Court's long-delayed orders do not even put an end to the motion-to-dismiss phase of the subject proceeding, demanding additional briefing and expert evidence before even ruling on motions to dismiss one of the two claims against Mr. Floor, and allowing leave to replead the other.  Moreover, just days after issuing the Order, Judge Gerber announced his retirement.  As a result, whichever judge is assigned this case will need significant time to get caught up on this ancient, but still early-stage, litigation.

[3] Courts have the discretion to deny even *timely* Rule 25(a) substitution motions where the death occurred years earlier and the estate has already been distributed.  *See* Fed. R. Civ. P. 25 (Advisory Committee Notes, 1963 Am.) ("A motion to substitute made within the prescribed time will ordinarily be granted, but under the permissive language of the first sentence of the amended rule ('the court may order') it may be denied by the court in the exercise of a sound discretion if made long after the death—as can occur if the suggestion of death is not made or is delayed—and circumstances have arisen rendering it unfair to allow substitution.  *Cf. Anderson v. Yungkau*, [329 U.S. 482, 485-86 (1947)], where it was noted under the [predecessor to current Rule 25(a)] that settlement and distribution of the estate of a deceased defendant might be so far advanced as to warrant denial of a motion for substitution even though made within the time limit prescribed by that rule.  Accordingly, a party interested in securing substitution under the amended rule should not assume that he can rest indefinitely awaiting the suggestion of death before he makes his motion to substitute.").

remainder of the case (*i.e.*, the Trustee will presumably amend his complaint and the Defendants (and the Estate) will submit the supplemental materials concerning Count 14 demanded by the Court) while any appeal of this discrete ruling is pending.  *See* note 6, *infra*.  Thus, immediate appeal presents the opportunity for efficiency for all parties, and fairness to the Estate, at *no* cost to anyone.

The Order also easily satisfies all three sub-parts of Section 1292(b).

***The Order Involves a Controlling Question of Law***.  If the Bankruptcy Court erred in granting the Trustee's untimely motion for an extension of time to comply with Rule 25(a), all claims against the Estate must be dismissed with prejudice.  Accordingly, the Order involves a controlling question of law.

***There Are Substantial Grounds to Conclude That the Bankruptcy Court Committed Reversible Error.***  The Order manifestly disregards the law of this Circuit.  The Trustee's Motion was made long after the 90-day deadline under Rule 25(a) had passed.  The Trustee admits, and the Bankruptcy Court held, that the Trustee took ***no*** steps to comply with Rule 25(a) within the 90-day deadline, despite admittedly being on notice.  Thus, under Federal Rule of Civil Procedure 6(a)(1)(B) ("Rule 6(a)(1)(B)"), the Trustee's and the Estate's Motions hinged on a single question:  *Why* did the Trustee fail to act, by moving to substitute or timely seeking an extension, during the 90-day period?  If the reason or reasons proffered by the Trustee constituted "excusable neglect" under Rule 6(a)(1)(B), it was potentially within the Bankruptcy Court's discretion to forgive his failure to meet the deadline, grant the Trustee's Motion, and deny the Estate's Motion.  If there was no "excusable neglect," however, it was *not* within the Court's discretion to extend the Rule 25(a) deadline, dismissal with prejudice was mandatory, and granting the Trustee's Motion was reversible error.  *See Williams v. KFC Nat. Mgmt. Co.*,

391 F.3d 411, 417 (2d Cir. 2004) (in the absence of legally adequate excuse, extension of deadline is "*not . . .* within the district court's discretion").[4]

The Trustee answered that dispositive question with admirable candor.  He conceded that the sole reason for his inaction was *inattention* during a busy time at his law firm.  In counsel's words, despite being on notice of the deadline, counsel simply "did not focus on the requirements of Rule 25(a)" before the deadline came and went:

> Unfortunately, during this very active period for the committee and its counsel, counsel to the committee did not focus on the requirements of Rule 25(a), and the ninety-day statutory period commenced by the suggestion of death filed by Goodwin Procter ran on or about June 8th.

Farley Decl.,[5] Ex. 6 (Transcript of Oral Argument (Mar. 10, 2011) ("Tr.")) at 249.

As a matter of law, this concession ended the inquiry and removed from the Bankruptcy Court's discretion the authority to grant the Trustee an extension.  As the Second Circuit explains, "a delay attributable solely to a [party's] failure to act with diligence *cannot* 'be characterized as 'excusable neglect'' . . . ."  *Padilla v. Maersk*, 721 F.3d 77, 84 (2d Cir. 2013) (emphasis added) (quoting *Dominguez v. United States*, 583 F.2d 615, 617 (2d Cir. 1978)).  Where there is no "excusable neglect," it is "*not . . .* within the district court's discretion" to grant an extension of time under Rule 6(a)(1)(B).  *Williams*, 391 F.3d at 417.  And where a trial court violates that bright-line rule, and finds "excusable neglect" where none existed, it is an

---

[4] The presence of "excusable neglect" is determined by the application of a four-factor test articulated by the U.S. Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380 (1993) (the "*Pioneer* factors").  The four factors are: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *Id.* at 395.  Even if factors one, two and four (prejudice, length of delay, and good faith) favor the moving party, it is an abuse of discretion to grant the requested relief unless the movant proffers an excuse satisfying factor three: "the reason for the delay, including whether it was within the reasonable control of the movant."  *Id.*; *see also Padilla*, 721 F.3d at 83-84; *Williams*, 391 F.3d at 415-16; *Silivanch*, 333 F.3d at 366-67.  This Motion and the Estate's contemplated appeal concern solely the absence, as a matter of law, of a legally adequate "reason for the delay," which is dispositive in the Second Circuit.

[5] The Exhibits referenced herein are attached to the Declaration of John O. Farley in Support of Diane Currier's (Executor of the Estate of Richard Floor) Motion for Leave to Appeal (Jan. 19, 2016) ("Farley Decl.").

abuse of discretion mandating reversal.  That is true even where the delay was vanishingly small, happened in good faith, and prejudiced no one.  *See, e.g.*, *Silivanch v. Celebrity Cruise, Inc.*, 333 F.3d 355 (2d Cir. 2003).

The Bankruptcy Court, however, was not pleased with the outcome mandated by the law. Judge Gerber announced from the bench, in early 2011, that his "inclination is, on something like this, that the chances of me blowing away their whole claim on a Rule 25 issues are pretty slim . . . ."  Farley Decl., Ex. 6 (Tr.) at 203.  Confronted with the binding law of this Circuit, however, the Bankruptcy Court did two things to avoid ordering such an outcome.

First, the Bankruptcy Court expressly disregarded the *only* excuse for lateness proffered by the Trustee: a failure to "focus on the requirements of Rule 25(a)."  Farley Decl., Ex. 6 (Tr.) at 249; Order at 4 n.9 (finding that "the Court does not rely on [these statements by counsel], as there are several other factors causing the Trustee's late motion to be excusable").  The Bankruptcy Court has wide latitude in making findings of fact, but it may not rewrite the record. The Trustee's admitted lack of "focus on the requirements of Rule 25(a)," Farley Decl., Ex. 6 (Tr.) at 249, was the only "excuse" proffered by the Trustee for his inaction.  And that lone excuse constitutes a "failure to act with diligence," which, as a matter of law, "*cannot* be characterized as excusable neglect."  *Padilla*, 721 F.3d at 84 (emphasis added) (internal quotation marks omitted).

Second, the Bankruptcy Court rewrote the law of this Circuit.  Among other things, the Bankruptcy Court erroneously:

- Held that it was within the Court's discretion to grant an extension in the absence of a cognizable excuse which "actually caused the neglect."  Order at 12, 18-19; *Cf. Silivanch*, 333 F.3d at 368-70.

- Characterized as mere "[b]est practices" the unequivocal requirement that a party unable to identify a proper substitute within the 90-day period mandated by Rule 25(a) must make a timely motion for extension of time, absent a cognizable excuse for inaction.  Order at 18; *Cf. Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 470 (2d Cir. 1998); *Mwani v. Bin Laden*, 302 F.R.D. 22, 24 (D.D.C. 2014).[6]

- Granted the Trustee's Motion (and denied the Estate's Motion) based *solely* on events which occurred weeks after the 90-day deadline had expired.  Order at 16-19; *Cf. Mich. Self-Insurers' Sec. Fund v. DPH Holdings, Corp. (In re DPH Holdings, Inc.)*, 434 B.R. 77, 84-85 (S.D.N.Y. 2010).

Each of these rulings is irreconcilable with well-settled Second Circuit law.

**_Resolution of These Controlling Issues of Law Will Materially Advance the Ultimate Termination of This Litigation._**  Finally, granting leave to appeal would materially advance the ultimate termination of this litigation because it would resolve all claims pending against the Estate, and allow the Estate to avoid participating in summary judgment proceedings and a lengthy trial involving numerous Defendants.  The Estate was forced to wait five years for a decision on its Motion to Dismiss—and further motion to dismiss briefing remains before the case can proceed.  A successful appeal would provide the Estate with much needed and deserved finality.

---

[6] "Under the Federal Rules, plaintiffs' motion for substitution under Rule 25(a) should have been filed no later than 90 days following the December 9, 2011 filing of the notice of [Osama] Bin Laden's death.  Alternatively, plaintiffs should have moved for an extension of time pursuant to Rule 6(b).  Plaintiffs failed to do either.  *Therefore, the action against Bin Laden must be dismissed*."  *Bin Laden*, 302 F.R.D. at 24 (emphasis added).  As the Court can see, the strictures of Rules 25(a) and 6(a)(1)(B) are not relaxed even for litigants seeking relief against the estate of Osama bin Laden.  Failure to act diligently in the face of a Death Notice is fatal to the moving party's claims.  The Bankruptcy Court's twisting of the law to preserve claims by a Trustee with a $25 million litigation war chest, who candidly took responsibility for his failure to preserve his rights, cannot be justified from any vantage point and should be promptly undone.

## BACKGROUND

This Motion emerges from litigation surrounding the bankruptcy of Lyondell-Basell Industries ("LBI"), a $21 billion international petro-chemical concern that sought the protection of Chapter 11 of the bankruptcy laws in January 2009.  LBI emerged from Chapter 11 protection nearly six years ago, when its plan of reorganization was confirmed on April 30, 2010. Numerous adversary proceedings emerged from that filing and remain pending, including the one that is the subject of this Motion.

In September 2010, pursuant to a Case Management Order entered by the Bankruptcy Court, ECF No. 383, the Estate moved to dismiss all claims against it with prejudice, on the ground that the Estate had not been substituted as a party following Mr. Floor's death, as required by Rule 25(a).[7]

In response to the Estate's Motion, the Trustee cross-moved for the first time for an extension of time in which to "amend the caption" to substitute the Estate for Mr. Floor.  The Bankruptcy Court resolved both motions in favor of the Trustee, via the Order, dated January 6, 2016.  This Motion is directed to that Order.

The facts are not in dispute.  The Estate submits that they present "exceptional circumstances" mandating the grant of this Motion, and that they satisfy the standard for the grant of interlocutory review set forth in 28 U.S.C. § 1292.  Set forth below is a summary of the legally relevant facts, none of which is disputed.

---

[7] The Movant and dozens of Defendants filed Motions to Dismiss in the Fall of 2010.  They were fully briefed and argued as of March 2011.  The Estate was named as a Defendant in Counts 7 and 14.  On January 6, 2016, the Bankruptcy Court ruled.  It dismissed Count 7 for failure to state a claim under Rule 12(b)(6), with leave to replead. Decision and Order on Defendants' Motions to Dismiss Counts 2, 6, 7, 14, and 18 (Jan. 4, 2016) at 24.  It refused to rule on the motions to dismiss Count 14, seeking instead further briefing and expert testimony on unspecified issues of Luxembourg corporations law.  *Id.* at 25-26.  And it denied the Estate's separate Rule 25(a) Motion as to both counts.  Order at 19.

- On March 8, 2010, the Trustee received formal notice of Mr. Floor's death, via a Suggestion of Death (the "Death Notice") served on all required parties, which under Rule 25(a) started a 90-day clock during which the Trustee was required to move to substitute an appropriate party for Mr. Floor.[8]  *See* Order at 4 & 13.

- The Trustee took ***no steps*** to comply with the 90-day deadline imposed by Rule 25(a), prior to its expiration.  *See* Order at 4-5, 13.

- The Trustee's first attempt to comply with Rule 25(a) took place on "or about June 10, 2010," three days after the deadline passed.  A paralegal at the Trustee's law firm, Nancy Tinsley, attested that at her request a colleague "was able to determine that papers had bene filed in the Middlesex Probate Court to appoint Diane Currier as Executrix, but had not yet been approved."  Farley Decl., Ex. 5 (Declaration of Nancy S. Tinsley (Nov. 11, 2010) ("Tinsley Decl.")), ¶ 4.

- The Trustee did nothing with that information until July 1, 2010—24 days after the expiration of the 90-day deadline, when Ms. Tinsley attests she telephoned the Probate Court "to determine if Ms. Currier's appointment had yet been made, and was told [by an unnamed person] that it had not been."  Farley Decl., Ex. 5 (Tinsley Decl.) ¶ 5; Order at 4.  (Ms. Tinsley attests that she made several additional calls to the Probate Court between July 1 and the week of July 26, 2010, without getting confirmation of Ms. Currier's appointment as Executor.  Farley Decl., Ex. 5 (Tinsley Decl.) ¶ 6).

- The Trustee never sent anyone to examine the file at the Probate Court or took any other steps to identify the Executor.  *See generally* Farley Decl., Ex. 5 (Tinsley Decl.).

- There were numerous documents naming Ms. Currier as Executor, on file with Probate Court no later than April 13, 2010—almost ***two months*** before expiration of the deadline—according to uncontroverted testimony and documentary evidence (including a copy of the document naming her Executor date-stamped April 13, 2010) submitted by Ms. Currier.[9]  *See* Farley Decl., Ex. 4 (Declaration of Diane Currier (Dec. 7, 2010) ("Currier Decl.")) ¶ 16.

- The Trustee never asked Ms. Currier or Mr. Floor's counsel whether she was the Executor or who the Executor was (despite having her name no later than June 10), or made any other inquiries regarding the Floor estate until after the Estate's Motion was filed, many months later.  *See* Farley Decl., Ex. 4 (Currier Decl.) ¶¶ 17-25.

---

[8] The Death Notice was served on the Trustee's predecessor, the Debtors' Official Committee of Unsecured Creditors (the "UCC").  The UCC was represented by Brown Rudnick LLP.  The Trustee, which is the UCC's successor in interest, is Edward Weisfelner, a partner at Brown Rudnick; he, too, is represented by Brown Rudnick in his capacity as Trustee, by the same team as had represented the UCC from the outset.  The Trustee succeeded to the rights of the UCC on April 30, 2010.

[9] In finding that it was somehow "impossible" for the Trustee to identify Ms. Currier, the Court never mentions this testimony or this date-stamped document.  Order at 7.

- Instead, over the course of the next several months beginning on July 2, 26 days after the expiration of the deadline, and without asking the Estate or the Bankruptcy Court for an extension of time, the Trustee circulated draft amended complaints to the various attorneys in this matter, including counsel to the Estate, who also represented other defendants.  These draft amended complaints replaced "Richard Floor" with "Defendant [Diane Currier], in her capacity as legal representative of the Estate of Richard Floor,"[10] and included a footnote stating that "[u]pon information and belief, although not yet formally appointed, Dianne [*sic*] Currier will be named as the Executrix of the Estate of Richard Floor.  It is the *intention of the LB Litigation Trust to name as defendant* the person who shall be appointed the legal representative of the Estate of Richard Floor."[11]  Order at 5 n.13, 14 (emphasis added).

- In that same time frame, the Trustee circulated draft Case Management Orders which included the Estate within a sub-group of Defendants.  *See* Order at 5.

- Prior to service of the Estate's Motion to Dismiss, the Trustee never served the complaint on the Executor and never filed a motion to substitute.  *See* Farley Decl., Ex. 3 (Opp.) at 6.

- On September 24, 2010, the date identified by the Court for motions to be directed to the sufficiency of the amended complaint, the Estate moved to dismiss pursuant to Rule 25(a), noting, correctly, that more than 90 days had passed since service of the Rule 25(a) notice and the Trustee had still not moved to substitute or seek an extension of time to make such a motion.  *See* Order at 6.

---

[10] This language, taken from the "Memorandum in Opposition," refers to the Memorandum of Diane Currier (Executor of the Estate of Richard Floor) in Opposition to the Litigation Trustee's Motion to Amend the Caption Or to Extend the Time for Substitution and to Substitute (Dec. 7, 2010) ("Opp."), which quotes draft amended complaints attached to opposing counsel's declaration.  *See* Farley Decl., Ex. 3 (Opp.) at 5.

[11] "Intention . . . to name as defendant" an appropriate substitute for a deceased party in an anticipated amended complaint at some unspecified later date does not remotely comply with Rule 25(a).  So in its only communications with the Estate's counsel, the Trustee announced in writing his "intention" to continue not to comply with Rule 25(a), without having secured or even *requested* an extension of time, effectively guaranteeing dismissal of the claims against the Estate as a matter of law.  As noted below, the Bankruptcy Court took extreme exception to Goodwin Procter's failure at this juncture—*26 days* after the expiration of the deadline—to charitably point out to the law firm attempting to sue its client for several billion dollars, that it was out of compliance with Rule 25(a).  Order at 5, 14, 17-18.  But the Estate's counsel could do no such thing, as mandated by its ethical duty not to elevate the Trustee's interests above its own client's.  *See* N.Y. Rules of Prof'l Conduct R. 1.2(e) ("A lawyer may exercise professional judgment to waive or fail to assert a right or position of the client, or accede to reasonable requests of opposing counsel, *when doing so does not prejudice the rights of a client*.") (emphasis added).

Put another way, if on this 26th day following expiration of the deadline, the Trustee had, rather than circulating a strangely-annotated draft amended complaint, simply asked Mr. Floor's counsel whether the Estate would agree to untimely substitution, counsel would have had no ethical choice but to refuse, and the Trustee would have been left with nothing to point to in its untimely motion for an extension of time.  Yet somehow, the Bankruptcy Court converted the *Trustee's* decision not to make a simple, direct request for an extension into borderline sanctionable misconduct by the *Estate's* lawyers.

- On October 7, 2010, the Trustee served the complaint on Ms. Currier pursuant to Rule 4. *See* Farley Decl., Ex. 4 (Currier Decl.) at ¶ 18.

- On November 16, 2010, the Trustee cross-moved for an extension of time in which to "amend the caption" to include the Estate, and to so amend the caption. *See* Order at 6.

On these undisputed facts, the law mandates dismissal.

The Trustee conceded from the outset that the sole inquiry before the Court was whether an adequate excuse existed for his failure to act *within the 90-day deadline*. Yet the Bankruptcy Court erroneously found "excusable neglect" based on legally irrelevant events occurring long after the deadline had passed. This is a *per se* abuse of discretion, in contravention of an avalanche of settled Second Circuit authority.

## QUESTION PRESENTED

Whether the Bankruptcy Court erred in holding that events occurring solely after expiration of the 90-day deadline under Rule 25(a) for moving to substitute the proper party following service of a statement noting the death of a party may constitute "excusable neglect," where the plaintiff admittedly took no action whatsoever within that 90 day-period and proffers no excuse for failing to act during that time, except that it was a "very active period . . . [and] counsel to the committee did not focus on the requirements of Rule 25(a) . . . ." Farley Decl., Ex. 6 (Tr.) at 249.

## ARGUMENT

The Order is an interlocutory order from which the Estate requests leave to appeal under 28 U.S.C. § 158(a)(3). Courts in this Circuit will grant leave to appeal an interlocutory order if the three factors set forth in 28 U.S.C. § 1292(b) are satisfied or if there are other "exceptional circumstances." *See, e.g.*, *Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, No. 02-6274, 2003 WL 22327118, at *2 (S.D.N.Y. Oct. 10, 2003).

10

Section 1292(b) instructs courts to consider whether an order "(1) involves a controlling question of law (2) over which there is a substantial ground for difference of opinion and (3) an immediate appeal would materially advance the ultimate termination of the litigation."  *Id.*

Here, those factors are easily met.  First, the Order raises a controlling question of law because if reversed it would terminate the action as to the Estate.  Second, there is substantial ground for disagreement with the Bankruptcy Court's decision to find "excusable neglect" based on events occurring *after* the 90-day deadline under Rule 25(a) had already passed.  Third, the appeal will materially advance the ultimate termination of the case because an appeal would provide the Estate with the finality contemplated by Rule 25(a).

Moreover, this is a case of "exceptional circumstances" warranting leave to appeal.  It would put an end to the five-year cloud of uncertainty hanging over the long-settled Estate in this protracted multi-billion dollar litigation.

## I.  The Three § 1292(b) Factors Justify Interlocutory Review.

### A.  Whether Events Occurring Only After the 90-Day Deadline for Moving to Substitute Can Constitute "Excusable Neglect" Is a Controlling Issue of Law That Warrants Appellate Review.

Rule 25(a)(1) requires that if a motion for substitution "is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."  The deadline imposed by Rule 25(a), like other deadlines under the Federal Rules of Civil Procedure, may be extended pursuant to Rule 6(b)(1)(A), with or without motion, "if the court acts, or if a request is made, before the original time or its extension expires."[12]  If the deadline has already passed, however, it may only be extended upon motion, and only "if the party failed

---

[12] Rule 6(b) is applicable in bankruptcy proceedings.  *See* Fed. R. Bankr. P. 9006(b).

to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).[13]

Thus, as the Trustee concedes and the Bankruptcy Court found, because the Trustee missed the 90-day deadline and did not seek an extension under Rule 6(b)(1)(A), absent a showing of "excusable neglect," Rule 25(a)(1) mandates dismissal of all claims asserted against the Estate.  Order at 13-14.  The Bankruptcy Court's Order denying the Estate's Motion and granting the Trustee's Motion involves a controlling question of law, since "reversal of the district court's opinion could result in dismissal of the action."  *In re Lloyd's Am. Trust Fund Litig.*, No. 96-1262, 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).  In fact, because "the action by or against the decedent *must* be dismissed," Rule 25(a)(1) (emphasis added), reversal of the district court's opinion *will* result in dismissal of the action.

Courts have recognized this common sense conclusion, and have held that denial of a motion to dismiss for failure to file a timely motion to substitute under Rule 25(a), or granting an untimely Rule 25(a) motion, involves a controlling question of law and warrants certification under § 1292(b).  *See, e.g.*, *Al-Jundi v. Estate of Rockefeller*, 757 F. Supp. 206, 208 (W.D.N.Y. 1990) (noting that "[t]he order now sought to be appealed kept defendant Monahan's estate in the case" and "does involve controlling questions of law"); *Burka v. Aetna Life Ins. Co.*, 894 F. Supp. 28, 33 (D.D.C. 1995), *aff'd*, 87 F.3d 478 (D.C. Cir. 1996) (certifying for interlocutory appeal under § 1292(b) court's order granting motion to substitute); *United States v. Gable*, 217

---

[13] The Second Circuit treats the term "excusable neglect" the same regardless of the context in which it arises, consistently applying the *Pioneer* factors in any situation in which it must be determined whether there was "excusable neglect."  For example, in the controlling *Silivanch* opinion, the Second Circuit explained that "[t]he term 'excusable neglect' appears frequently in the United States Code and Federal Rules as a basis for motions to extend time limitations," including the Bankruptcy Code and the Federal Rules of Appellate Procedure.  333 F.3d at 367 n.6.  The court went on to apply the *Pioneer* factors, which themselves emerged from the bankruptcy context, to the term "excusable neglect" as its appears in Rule 4(b) of the Federal Rules of Appellate Procedure, reversing as an abuse of discretion the extension of the deadline to notice an appeal by two days.  *Id.* at 369-71.  The Bankruptcy Court below erred in concluding that the Second Circuit would apply the "excusable neglect" standard somehow differently in the situation at bar than in the context of a missed deadline to notice an appeal under Federal Rule of Appellate Procedure 4(b), incorrectly holding that *Silivanch* was "easily distinguishable," because it "involved a late *notice of appeal*."  Order at 19 n.56 (emphasis in original).  The Second Circuit said the exact opposite in *Silivanch* itself—"excusable neglect" means the same thing wherever it appears.  333 F.3d at 366-67.

F. Supp. 82, 84 (D. Conn. 1963) (certifying for interlocutory appeal under § 1292(b) denial of motion to dismiss and grant of order substituting parties under Rule 25(a)(1)).  And this Court, on interlocutory review, has previously reversed a bankruptcy court order on this very issue—an erroneous finding of excusable neglect.  *See In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 691- 92 (S.D.N.Y. 2011) (reversing denial of motion to remand as to four cases where the bankruptcy court had excused untimely removals on grounds of excusable neglect).[14]

**B.      Substantial Grounds For a Difference of Opinion Exist Because the Bankruptcy Court's Order Contradicts Binding Second Circuit Authority.**

The decision of the Bankruptcy Court is irreconcilable with and in fact negates the black-letter law of this Circuit.  As discussed above, under Rule 25(a):

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent *must be dismissed* (emphasis added).[15]

Richard Floor was named as a defendant in the adversary proceeding commenced by the UCC on July 22, 2009.  Complaint, ECF No. 1 (July 22, 2009).  He died on February 18, 2010, and a "Suggestion of Death" was filed and served on March 8, 2010.  ECF No. 367.  Rule 25(a) required the UCC or the Trustee, which succeeded to the UCC's claims, to file a motion within 90 days of March 8, 2010 to preserve their claims against Mr. Floor.  The Trustee failed to do so and the Estate moved to dismiss the Trustee's case against it.  The Trustee opposed the Estate's

---

[14] The question of law here—whether events occurring solely after expiration of the 90-day deadline under Rule 25(a) may constitute "excusable neglect"—is no less "controlling" because other claims against other parties will survive regardless of whether leave is granted.  In *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, the Second Circuit held that the § 1292(b) factors warranted review even though the order being appealed denied only one defendant's motion to dismiss.  921 F.2d 21, 24 (2d Cir. 1990).  The court explained that "[i]f we reverse the district court's order and dismiss the actions against [that defendant], those actions would be terminated, and thus our resolution of the issues involved in the certified order would be 'controlling' in that sense."  *Id.*; *see also Flo & Eddie, Inc v. Sirius XM Radio Inc.*, No. 13-5784, 2015 WL 585641, at *2 (S.D.N.Y. Feb. 10, 2015) (certifying appeal where, "[i]f the Court's holding . . . is incorrect, then significant portions of this lawsuit . . . will have to be dismissed").

[15] Rule 25(a) is applicable in bankruptcy proceedings.  *See* Fed. R. Bankr. P. 7025.

Motion and belatedly (163 days after the expiration of the 90-day period) moved for an extension of time in which to "amend the caption" to replace Mr. Floor with Ms. Currier. The Bankruptcy Court's denial of the Estate's Motion and granting of the Trustee's Motion constitutes a *per se* abuse of the Bankruptcy Court's discretion and reversible error.

It is undisputed that the Trustee did not make a timely motion to substitute Ms. Currier as a party under Rule 25(a). It is also undisputed that the Trustee did not make a timely motion to extend his time to substitute Ms. Currier as a party under Rule 6(b)(1)(A). The Trustee admitted that he took no action to comply with Rule 25(a), or to seek an extension under Rule 6(b), until after the 90-day deadline had already expired, and that he had no excuse for his failure to act, other than that it was a "very active period . . . [and] counsel to the committee did not focus on the requirements of Rule 25(a) . . . ." Farley Decl., Ex. 6 (Tr.) at 249.

"'Courts routinely dismiss cases with prejudice where there is a failure to comply with the time period specified by Rule 25(a).'" *Nicosia v. United States*, No. 11-5069, 2014 WL 2957496, at *2 (E.D.N.Y. July 1, 2014) (quoting *Mulvey v. Sonnenschein Nath & Rosenthal LLP*, No. 08-1120, 2011 WL 5191320, at *1 (E.D.N.Y. Oct. 31, 2011)).[16] And the Trustee's unexcused neglect is dispositive under controlling Second Circuit authority. *See, e.g.*, *Silivanch*, 333 F.3d at 366-70 (the district court's allowance of two-day-late notice of appeal as excusable neglect was a reversible abuse of discretion, even though delay was short, the moving party's

---

[16] *See also Merisier v. Comm'r, Soc. Sec. Admin.*, No. 11-1168, 2012 WL 3230449, at *2 (E.D.N.Y. Aug. 6, 2012) ("[T]he ninety-day limitation of Rule 25 is . . . strictly applied."); *Nauman v. Rensselaer Polytechnic Inst.*, No. 07-0740, 2010 WL 1257876, at *1 (N.D.N.Y. Mar. 26, 2010) ("[I]n the absence of a timely motion to substitute, Nauman's action against RPI cannot survive and is therefore dismissed pursuant to Fed. R. Civ. P. 25(a)(1)."); *Keating v. Leviton Mfg. Co., Inc.*, No. 06-6027, 2009 WL 234654, at *2 (E.D.N.Y. Jan. 30, 2009) ("[D]ismissal of an action is warranted when no motion for substitution is made more than ninety days after a suggestion of death is filed."); *Smith v. Doe*, No. 08-10437, 2010 WL 1404099, at *2 (S.D.N.Y. Jan. 25, 2010) ("I recommend that Judge Rakoff dismiss this lawsuit pursuant to Rule 25(a)(1)."); *Rodgers v. City of N.Y.*, No. 05-5521, 2006 WL 2943621, at *1 (E.D.N.Y. Sept. 6, 2006) ("As no party has been substituted for decedent, whose family does not intend to prosecute this case, and no further action has been taken on plaintiff's behalf, it is the recommendation of this Court that the complaint be dismissed pursuant to Rules 25(a)(1) . . . .").

proffered excuse was its good faith reliance on a misstatement by opposing counsel, and the delay caused no prejudice to the non-moving party); *Unicorn Tales*, 138 F.3d at 470 ("[I]nability or a significant difficulty in identifying [party's] legal representative or successor" is not an excuse for failure to make a timely motion under Rule 6(b) to extend the Rule 25(a) deadline).

As the Second Circuit recently affirmed yet again, "a delay attributable solely to a defendant's failure to act with diligence *cannot* 'be characterized as 'excusable neglect.'" *Padilla*, 721 F.3d at 83-84 (emphasis added) (rejecting moving party's excuse that it "overlooked" a key legal argument). And just last month, this Court affirmed that attorney workloads, in the form of "competing deadlines, without more, *do not* constitute excusable neglect." *Henny v. Comm'r of Soc. Sec.*, No.15-629, 2015 WL 9659981, at *10 (S.D.N.Y. Dec. 17, 2015) (emphasis added).

Indeed, though the decisional law of this Circuit makes clear that the Estate's Motion should have been granted, and the Trustee's Motion should have been denied, in a way, this cases stands in contrast to most other cases concerning "excusable neglect" under Rule 6(b). That is because in most cases, the Court must evaluate whether the excuses proffered, in light of the actions taken, constitute excusable neglect. Here, however, there is quite simply nothing to evaluate; the Trustee admits to taking no action and offers no excuse.

In a word, if Rule 6(b)(1)(B) has any meaning at all, the Bankruptcy Court erred and must be reversed.

1.      **The Bankruptcy Court Ignored Binding Second Circuit Authority Requiring a "Hard Line" Approach to Determining Excusable Neglect.**

The Second Circuit has taken a "hard line" in evaluating claims of excusable neglect. As it counseled in *Silivanch*, "[w]e have noted that the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule' and . . . that where 'the rule is entirely clear,

we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'"  *Silivanch*, 333 F.3d at 366-67 (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc*., 127 F.3d 248, 250-51 (2d Cir. 1997)).  This "hard line" has long been the rule in this Circuit.  For example, in *Canfield*, relied upon by the *Silivanch* court, the Second Circuit affirmed the dismissal with prejudice of plaintiff's claims due to summary judgment opposition papers being filed 29 days late, despite the plaintiff's attorney's uncontroverted testimony that the untimeliness was due to his inadvertent misinterpretation of the relevant local rule.  127 F.3d at 251; *accord Russell v. City of Milwaukee*, 338 F.3d 662, 668 (7th Cir. 2003) (no showing of excusable neglect under Rule 6 where party claimed "that he 'was unintentionally derelict in filing appropriate substitution of parties'").

> a.   **Under Well-Settled Second Circuit Law, Events Occurring After the Relevant Deadline Cannot Form the Basis of a Finding of Excusable Neglect.**

Determining whether "excusable neglect" has been established under Rule 6(b) is necessarily a fact-specific inquiry.  However, certain bright line rules have emerged in this Circuit.  One such rule, recognized but not enforced by the Bankruptcy Court, is that "the proffered reason must have actually caused the neglect" in failing to meet the deadline.  Order at 12.  Therefore, by definition, events occurring after the deadline already passed are irrelevant. *See In re DPH*, 434 B.R. at 84-85 (holding that the court could not consider proffered events occurring after expiration of deadline because by definition they cannot excuse failure to act within the deadline); *see also Williams*, 391 F.3d at 417 (if moving party fails to proffer excuse for inaction, granting an *ex post* extension of time to file is "*not . . .* within the district court's discretion").

Here, however, all of the excuses relied upon by the Court occurred after the deadline. The Bankruptcy Court *per se* erred in finding them sufficient to establish excusable neglect.

16

### b.    The Only Excuses Relied on by the Bankruptcy Court Occurred *After* the Deadline Passed.

The Bankruptcy Court found three factual bases for its conclusion that the Trustee's failure to timely move to substitute Ms. Currier as a party was "excusable," all of which arose only after the Trustee had already missed the deadline.  It is almost silly to say, but as such, they simply could not have *caused* the Trustee to miss the deadline, as the court itself recognized is required under the well-settled law of this Circuit.  Order at 12; *see In re DPH*, 434 B.R. at 84-85; *see also Williams*, 391 F.3d at 417.  Relying on these bases, as the Bankruptcy Court did, turns Rule 6(b)(1)(B) on its head.

Perhaps more important, the facts cited by the Bankruptcy Court, read exceedingly charitably, could at most provide an explanation for why the Trustee supposedly had difficulty identifying the Executor of Mr. Floor's Estate.  But if the Trustee did not know the identity of Mr. Floor's Executor during the 90-day period, he certainly *knew that he did not know*.  As such, the facts identified by the Bankruptcy Court have no bearing on, and do not excuse in any way, the Trustee's failure to seek an extension of the Rule 25(a) deadline, under the liberal provisions of Rule 6(b)(1)(A).  That failure alone requires dismissal of the Trustee's case against the Estate, denial of the Trustee's motion to substitute, and reversal of the Bankruptcy Court's Order.  *See Unicorn Tales*, 138 F.3d at 470; *Jones Inlet Marina, Inc. v. Inglima*, 204 F.R.D. 238, 240 (E.D.N.Y. 2001) (refusing to excuse the failure to substitute a party under Rule 25(a) on the grounds that the legal representative was not known because plaintiff could have brought a motion to extend time for filing under Rule 6(b) prior to expiration of the deadline); *Mwani*, 302 F.R.D. at 24 ("Under the Federal Rules, plaintiffs' motion for substitution under Rule 25(a) should have been filed no later than 90 days following the December 9, 2011 filing of the notice of [Osama] Bin Laden's death.  Alternatively, plaintiffs should have moved for an extension of

17

time pursuant to Rule 6(b).  Plaintiffs failed to do either.  Therefore, the action against [Osama] Bin Laden must be dismissed.").[17]

*Delays in the Probate Court Docketing Currier's Appointment.*  As the first basis for finding excusable neglect, the Bankruptcy Court found that although Ms. Currier was appointed as the Executor of Mr. Floor's estate on April 9, her appointment was not "docketed in the system" until July 23, and Ms. Currier's appointment was therefore unknowable to the public in the intervening period.  Order at 16.  The Bankruptcy Court found that this delay gave rise to excusable neglect.  However, it is uncontested that the 90-day deadline lapsed by June 7, 2010, Order at 13, and that the Trustee did not even attempt to determine the identity of Mr. Floor's Executor until after the expiration of the 90-day period, learned on his ***first inquiry*** to the Probate Court that papers had been filed naming Ms. Currier Executor (but was told inaccurately that they had not yet been approved), and did nothing at all with this information for another three weeks.  *See* Farley Decl., Ex. 5 (Tinsley Decl.) ¶¶ 4-5; Order at 4.

*Inaccurate Information Provided to the Trustee by the Probate Court*.  As the second basis for finding excusable neglect, the Bankruptcy Court found that a paralegal in the office of counsel for the Trustee contacted the Probate Court on several occasions beginning on July 1 (again, a date after the 90-day deadline had passed) and each time was told that Ms. Currier had not yet been appointed.  Order at 4.  The Bankruptcy Court therefore *hypothesized* (in favor of the party bearing the burden to establish excusable neglect)[18] that *had* the Trustee's paralegal

---

[17] The *Bin Laden* court rejected the very interpretation of the law urged by the Trustee and adopted by the Bankruptcy Court, holding that "plaintiffs [do not] get an indefinite postponement of dismissal ending only when they identify the substituted party.  That would render the deadline set by Rule 25(a) nugatory." *Id.* at 24.  That is exactly what the Bankruptcy Court did here, by converting hypothetical (and, in truth, imaginary) difficulty in identifying Ms. Currier into an irrefutable excuse for perpetual inaction.

[18] *See, e.g.*, *Harp v. City of N.Y.*, No. 01-6604, 2008 U.S. Dist. LEXIS 58023, at *6 (S.D.N.Y. July 30, 2008) (denying late motion to substitute and stating that "movant must prove good faith and a reasonable basis for non-compliance") (internal quotation marks omitted).

taken action within the 90-day period, "there is no reason to believe that she would have been told the true facts then, when she was given wrong information twice thereafter."  Order at 17. As is clear from the Bankruptcy Court's speculation, the Trustee's paralegal did not even attempt to contact the Probate Court until after the deadline had passed.  *See also* Farley Decl., Ex. 5 (Tinsley Decl.) ¶¶ 3-5.

*Counsel for Mr. Floor Withheld Information As to Currier's Appointment.*  As the third basis for finding excusable neglect, the Court found that at several times in July 2010— weeks after the 90-day deadline had passed—Goodwin Procter ("Goodwin"), counsel to the Estate, had an opportunity to *volunteer* to the Trustee the identity of the Executor of Mr. Floor's estate (the Trustee never asked Goodwin), and chose not to.  Because the 90-day deadline expired on June 6, even if the Court's findings had legal basis—and as discussed below they do not—the events took place after the Trustee had already missed the relevant deadline and therefore cannot form the basis of a finding of excusable neglect.[19]

In summary, and at the risk of being repetitive, the Bankruptcy Court's decision must be reversed because it found "excusable neglect" based solely upon events that took place after the Trustee had already missed the 90-day deadline, which is reversible error.  *See Silivanch*, 333 F.3d at 368-70; *Williams*, 391 F.3d at 417; *In re DPH*, 434 B.R. at 84-85.

Furthermore, even if this Court found that "excusable neglect" could be based upon events occurring after the deadline had already lapsed—and under the law of this Circuit it cannot—the Bankruptcy Court's decision should still be reversed because it simply conducted the wrong legal analysis.  The Bankruptcy Court focused entirely on whether it was excusable under the circumstances of the case—as it found them to be—that the Trustee did not identify

---

[19] After finding that the 90-day period commenced on March 8, 2010, the Bankruptcy Court found that the 90-day period "closed on June 7, 2010."  Order at 13.  However, June 6, 2010 is 90 days from March 8, 2010, and thus the 90-day period actually closed on June 6.

Ms. Currier as the Executor of Mr. Floor's estate within the 90-day period.  But that is not the salient question.  The Second Circuit has set forth what a party must do when it cannot identify a decedent's executor within the 90-day window; it must make a timely motion under Rule 6(b)(1)(A) for an extension, unless some excuse exists for its failure to take *that* step, *independent* of its inability to identify the proper substitute party within 90 days.  *Unicorn Tales*, 138 F.3d at 470.  The Bankruptcy Court made no factual or legal finding justifying the Trustee's failure to do so and instead erroneously waived off this unequivocal requirement as a mere "best practice[]."  Order at 18.  This is reversible error under the well-settled law of this Circuit.

### 2.      The Bases Underlying the Court's Findings Cannot Be Supported.

Compounding the errors described above are the factual and legal acrobatics it took the Bankruptcy Court to get there.

For example, the Bankruptcy Court found that although Ms. Currier was appointed on April 9, the Probate Court did not docket the appointment until July 23 and therefore that the appointment was "***unknowable***" until July 23.  Order at 16 (emphasis added).  To make this finding, the Court relied entirely on this double-hearsay statement by Paralegal Tinsley:  "I was informed by Ann Gilbert [a legal executive assistant at the Trustee's firm] that she had learned [from an unnamed person] on [August 2, 2010] that the appointment of Ms. Currier was official on April 9, 2010, but that it had not been docketed in the system until July 23, 2010."  Farley Decl., Ex. 5 (Tinsley Decl.) ¶ 7.  And the Court rejected, without even mentioning it, the Declaration of Ms. Currier, which showed that her appointment was a matter of public record as early as March 11, 2010—approximately two months prior to the 90-day deadline to substitute.  *See* Farley Decl., Ex. 4 (Currier Decl.) ¶¶ 7-14 (appointment information available in files at Probate Court by March 11).  Although a trial court has great liberty in making factual determinations, the logic behind these particular determinations is puzzling.

20

Ms. Currier's declaration was based on personal knowledge and attached publicly available documents—for example, a date-stamped copy of the document appointing her Executor, retrieved *from the Probate Court in April 2010*, long before the deadline, and a copy of the notice of appointment published in the local newspaper on March 18—which conclusively establish that her appointment as Executor was knowable to anyone who bothered to look in the Probate Court's file or the newspaper from March 11, 2010 on (which the Trustee admits he did not do). *See* Farley Decl., Ex. 4 (Currier Decl.) ¶¶ 7-14.[20] Nevertheless, the Bankruptcy Court accepted as true that the appointment was not "docketed in the system" until July 23 and, in total disregard of the *only* evidence in the record regarding whether the appointment was "knowable," concluded that it was not.

The Bankruptcy Court's decision also hinged critically on the Court's belief that counsel for Mr. Floor and Ms. Currier acted wrongly by not volunteering to the Trustee that Ms. Currier had been appointed. The Bankruptcy Court found that such misconduct, as the Bankruptcy Court perceived it, contributed to its finding of "excusable neglect"—even though, as discussed above, the Bankruptcy Court acknowledged that all of Goodwin's supposed "gamesmanship" occurred only after the Trustee had already missed the deadline. Order at 17-18.

The record is clear that the Trustee never bothered to ask counsel for Mr. Floor whether an Executor had been appointed. Nevertheless, the Bankruptcy Court found that it was borderline sanctionable that Mr. Floor's counsel "stay[ed] mum [about the identity of the Executor] while continuing to participate in the litigation while time passed," Order at 18, despite the fact that counsel also represented several other Defendants in the litigation.

---

[20] Ms. Currier testified that she went to the very same Probate Court on April 13, 2010 and had no trouble retrieving from the file a date-stamped copy of the document naming her Executor, and submitted with her sworn declaration a date-stamped copy of that document, showing that she retrieved it *months* before the Trustee even attempted to ascertain her identity. Farley Decl., Ex. 4 (Currier Decl.) ¶ 14. The Bankruptcy Court does not even *mention* this document or testimony anywhere in its 19-page Order.

As discussed above in note 11, *supra*, it would have been absolutely inappropriate for Mr. Floor's counsel to intervene on behalf of the Trustee and potentially aid the Trustee in prosecuting its claim against the Estate, especially where a straightforward request by the Trustee for an extension of time would necessarily have been rejected. *See* N.Y. Rules of Prof'l Conduct R. 1.2(e).

In any event, the Trustee had no excuse for failing to meet the deadline, and so even if Goodwin had informed the Trustee at the first opportunity complained of by the Bankruptcy Court—24 days after the deadline expired—it would have had no impact on the *Pioneer* analysis at all.

Moreover, the Bankruptcy Court's finding that Goodwin was obligated to inform the Trustee (not "stay mum") that Ms. Currier had been appointed is directly at odds with the binding law of this Circuit. For example, in *Unicorn Tales*, appellant argued that its failure to comply with Rule 25(a) within the 90-day deadline was excused because the respondent knew the identity of the executor of decedent's estate, but did not volunteer it. In denying the appeal the Second Circuit held: "The rule does not require that the statement [of death] identify the successor or legal representative; it merely requires that the statement of death be served on the involved parties." *Unicorn Tales*, 138 F.3d at 470. The Court went on to explain that a requirement to disclose the identity of the executor might be necessary were there no other mechanism to protect a party that had not been able to identify a proper substitute within the 90 days, but since Rule 6(b) provides a solution by allowing a party to timely seek an extension of the Rule 25(a) deadline, the requirement is not necessary and does not exist. *Id.*

Finally, in finding that certain, post-expiration events excused the Trustee's neglect, the Bankruptcy Court curiously ignored the *only* explanation for missing the deadline that the Trustee actually proffered.  During oral argument, Trustee's counsel freely admitted that:

> during this very active period for the committee and its counsel, counsel to the committee did not focus on the requirements of Rule 25(a), and the ninety-day statutory period commenced by the suggestion of death filed by Goodwin Procter ran on or about June 8th.[21]

Farley Decl., Ex. 6 (Tr.) at 249.  In other words, the Trustee did not miss the deadline because of a delay at the Probate Court, or because it received incorrect information from the Probate Court, or because of sharp practice by opposing counsel, but because the Trustee's attorneys were busy. Attorney inattention simply cannot be characterized as excusable neglect in this Circuit.  *See Padilla*, 721 F.3d at 83-84 ("The district court concluded that Maersk did not offer a valid reason for its delay since Maersk stated only that its argument pertaining to the officers had been 'overlooked' during the two-year period following class certification. . . . Because a delay attributable solely to a defendant's failure to act with diligence cannot 'be characterized as 'excusable neglect,'' we see no abuse of discretion by the district court in denying the motion.") (quoting *Dominguez*, 583 F.2d at 617); *see also Henny*, 2015 WL 9659981, at *10 ("[C]ompeting deadlines, without more, do not constitute excusable neglect.").

### C.     Resolution of These Controlling Issues of Law Will Materially Advance the Ultimate Termination of This Litigation, Because a Correct Application of Rule 25(a) Requires Dismissal of the Claims Against the Estate.

Dismissal of all claims asserted against the Estate "may materially advance the ultimate termination of the litigation," and thus certification is warranted.  *See* 28 U.S.C. § 1292(b).  An immediate appeal advances the ultimate termination of litigation where it "promises to advance the time to trial or to shorten the time required for trial."  *In re Hawker Beechcraft, Inc.*, No. 12-

---

[21] The Bankruptcy Court was well aware of Trustee's own explanation, but specifically disregarded it.  Order at 4 n.9.

11873, 2013 WL 6673607, at *5 (S.D.N.Y. Dec. 18, 2013) (internal quotation marks omitted); *see also* 16 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 3930 (3d ed. 1998) ("[Q]uestions found to be controlling commonly involve the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial."). This requirement is met here because reversal of the Bankruptcy Court's order will result in the dismissal of all claims now asserted against the Estate, thus avoiding protracted pretrial proceedings and a potential trial on the issue of whether the Trustee may, as a matter of Luxembourg law, impose personal liability on the Estate for the pre-merger actions of Basell GP—a significant, complicated issue of foreign law.

This Court certifies controlling issues of law that would result in the dismissal of all claims against one defendant because dismissal of a defendant materially advances the ultimate termination of litigation. *See Zakrzewska v. The New Sch.*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009), *certified question answered, judgment aff'd sub nom. Zakrzewska v. New Sch.*, 620 F.3d 168 (2d Cir. 2010) (certifying for interlocutory review "controlling question of law, the resolution of which would materially advance the ultimate termination of this litigation" where contrary ruling "would result in dismissal of the action" as to one defendant); *see also Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("The district court correctly concluded that our reversal 'may' take BPXA, as a defendant, and Reese's control claims against all remaining defendants out of the case. That is sufficient to advance materially the litigation, and therefore certification of the interlocutory appeal was permissible."). *Cf. Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 141-42 (E.D.N.Y. 2015) ("[I]t is not clear whether the third prong is satisfied . . . because Adsource would remain a defendant irrespective of the Second Circuit ruling on the [] issue.").

24

Immediate appeal will also provide much needed finality regarding the Estate's participation in this litigation. The Estate already has waited five years for resolution of the Motion to Dismiss on which it now seeks immediate appeal. Interlocutory review could avoid, at a minimum, the Estate's participation in a motion for summary judgment on all claims asserted against the Estate, and a protracted multi-defendant trial.

For the reasons discussed in Section I.B, *supra*, there is a high probability that the Bankruptcy Court erred by permitting substitution based solely on events occurring after expiration of the 90-day deadline. Resolution of this issue will materially advance the litigation because "doing so now rather than after a lengthy trial would be most saving of the time and efforts of all." *Al-Jundi*, 757 F. Supp. at 208; *see also id.* at 207 (certifying for interlocutory appeal order that "kept defendant Monahan's estate in the case").

## II.    Exceptional Circumstances Justify Interlocutory Review to Prevent Further Delay and Prejudice to the Estate.

"[E]xceptional circumstances" further warrant immediate interlocutory review. *Mirant*, 2003 WL 22327118, at *2. The Estate filed its Motion to Dismiss on December 6, 2010, and the Bankruptcy Court delayed ruling on it until January 4, 2016. During this five-year period, the Estate was settled and distributed. *See* Affidavit of Diane Currier (Executor of the Estate of Richard Floor) in Support of Motion for Leave to Appeal (Jan. 18, 2016) ¶¶ 4-5 ("Currier Aff.").

Now, the Bankruptcy Court's belated grant of the Trustee's Motion places a dark cloud over the Estate once more. The Estate is faced with the prospect of a complex lawsuit claiming billions in damages that has been trudging slowly forward since 2009 with no indication that it will conclude in the near future. *See In re Lehman Bros. Holdings, Inc.* No. 13-2211, 2014 WL 3408574, at *3 (S.D.N.Y. June 30, 2014) (declining interlocutory review over $26 million litigation, but explaining that "added delay and expense" may justify interlocutory review "in

25

'big' cases"); *see also Caruso v. City of New York*, No. 06-5997, 2013 WL 6569783, at *2 (S.D.N.Y. Dec. 13, 2012) (denying review over simple retaliation claims but noting that interlocutory review may be justified in "protracted or unusually expensive" litigation) (internal quotation marks omitted).  Indeed, even with the Bankruptcy Court's recent series of orders, the adversary proceeding remains stalled at the motion to dismiss stage on the two counts concerning the Estate.  The Trustee received permission to re-plead one of the dismissed Luxembourg law counts (Count 7), and the Bankruptcy Court requested further briefing from the parties in order to determine whether the remaining count should be dismissed (Count 14).  *See* n.7, *supra*.

Worse, the insurance carriers associated with various parties to this lawsuit, while agreeing to advance defense costs for the Estate, have disputed that they are obligated to provide coverage for any loss that the Estate may suffer under the applicable policy, including damages or settlement payments.  This is far from just lawyers posturing—the carriers have filed a lawsuit in the Netherlands, seeking a declaration that they are not obligated to pay for any such loss (the "Dutch Coverage Action").[22]  *See* Farley Decl., Ex. 1 (Summons issued in Netherlands D&O Action); Ex. 2 (English translation of summons).  The Dutch Coverage Action has been stayed pending resolution of this adversary proceeding.  *See* Farley Decl. ¶¶ 7-8.  If successful, it would arguably place the burden on the Estate—and thus on Mr. Floor's heirs—to cover personally any loss associated with any judgment or settlement in this case.  Currier Aff. ¶ 5.  Justice and equity require that the Estate not be forced to await the outcome of these issues and litigate for years just so it can appeal the Order.  These exceptional circumstances justify granting the Estate leave to appeal.  *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172

---

[22] The Dutch Coverage Action is styled *Chartis Europe, S.A., et al. v. BI S.á.r.l., et al.*, and is pending in Amsterdam District Court, Commercial Matters Part.  Farley Decl. ¶ 4.

(S.D.N.Y. 1987) (granting leave to appeal, and noting that "exceptional cases" include "where an immediate appeal may avoid protracted and expensive litigation").[23]

## **CONCLUSION**

Diane Currier, as Executor of the Estate of Richard Floor, respectfully requests that this Court grant leave to appeal the Bankruptcy Court's decision denying her Motion to Dismiss and granting the Trustee's Motion to Amend the Caption or Substitute.

---

[23] *See also W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000) (granting leave to appeal, as "the legal and statistical issues in the instant case are complex, and the financial and legal stakes are high").

27

Dated: January 19, 2016

Respectfully submitted,

**GOODWIN PROCTER LLP**

By:  /s/ John O. Farley
John O. Farley
Michael T. Jones (*pro hac vice*)
Jordan D. Weiss
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY
Tel:  212.459.7318
Fax:  212.355.3333
Email: jfarley@goodwinprocter.com

*Counsel for Diane Currier (Executor of the Estate of Richard Floor)*

## **CERTIFICATE OF SERVICE**

    I, John O. Farley, hereby certify that on January 19, 2016, a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system.

                                    */s/ John O. Farley*
                                      John O. Farley