## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re LYONDELL CHEMICAL COMPANY, *et al.*, <br><br>         Debtors. | |
| DIANE CURRIER, EXECUTOR AND LEGAL REPRESENTATIVE OF THE ESTATE OF RICHARD FLOOR (deceased), <br><br>         Appellant, <br><br>      -v- <br><br> EDWARD S. WEISFELNER, AS LITIGATION TRUSTEE OF THE LB LITIGATION TRUST, <br><br>         Appellee. | 16 Civ. 737 (AJN) |

**MEMORANDUM OF LAW IN OPPOSITION TO DIANE CURRIER'S (EXECUTOR OF THE ESTATE OF RICHARD FLOOR) MOTION FOR LEAVE TO APPEAL**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................... 4

    A.    The Initial Committee Action ................................................. 5

    B.    Suggestion of Death Filed With Litigation Effectively in Abeyance ................... 6

    C.    The Amended Complaint, Case Management Order and Status Conference ......... 8

    D.    Status of Litigation and the Decision Below ........................... 11

ARGUMENT ...................................................................................................... 12

I.    Currier Satisfies None of the Prerequisites of 28 U.S.C. 1292(b). ................. 12

    A.    Currier Identifies No "Controlling Issue of Law" as to Which There is "Substantial Ground" to Doubt the Ruling Below ................... 12

        1.    Currier's Appeal Does Not Raise a "Pure" Issue of Law. ......... 13

        2.    Currier's Attempt to Re-Frame the Standard into a Per Se Rule is Unavailing. ................... 14

            (a)    Even Currier's Per Se Approach Turns on Fact Issues ................ 14

            (b)    Currier's Proposal of a Per Se Rule Does Not Constitute Substantial Ground to Doubt the Bankruptcy Court's Legal Standard. ................... 16

        3.    Alternative Basis for Currier's Substitution for Floor. ................ 20

    B.    Review Would Not "Materially Advance Termination of the Litigation." ........... 21

II.    "Exceptional Circumstances" Do Not Justify Granting Currier Leave. ............ 22

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Adelphia Commc'ns Corp.,
  333 B.R. 649 (S.D.N.Y. 2005)........................................................................12, 23

Al-Jundi v. Estate of Rockefeller,
  757 F. Supp. 206 (W.D.N.Y. 1990) ................................................................18, 22

Burka v. Aetna Life Ins. Co.,
  87 F.3d 478 (D.C. Cir. 1996)..............................................................................17

Canale v. Manco Power Sports, LLC,
  No. 06 CIV. 6131 (PKL), 2010 WL 2771871 (S.D.N.Y. July 13, 2010) ................18

Canfield v. Van Atta Buick/GMC Truck, Inc.,
  127 F.3d 248 (2d Cir. 1997)..........................................................................19, 20

Century Pac., Inc. v. Hilton Hotels Corp.,
  574 F. Supp. 2d 369 (S.D.N.Y. 2008)..............................................................12, 13

Chas. Pfizer & Co. v. Laboratori Pro-Ter Prodotti Therapeutici S. p. A.,
  278 F. Supp. 148 (S.D.N.Y. 1967) .......................................................................22

In re Cosmopolitan Aviation Corp.,
  763 F.2d 507 (2d Cir.1985)..................................................................................20

In re DPH Holdings Corp.,
  434 B.R. 77 (S.D.N.Y. 2010)...............................................................................19

F.T.C. v. Wyndham Worldwide Corp.,
  10 F. Supp. 3d 602, 635 (D.N.J. 2014), aff'd, 799 F.3d 236 (3d Cir. 2015) .........................22

In re Fairfield Sentry Ltd. Litig.,
  458 B.R. 665 (S.D.N.Y. 2011)..........................................................................13, 18

Fed. Hous. Fin. Agency v. UBS Americas, Inc.,
  858 F. Supp. 2d 306 (S.D.N.Y. 2012), aff'd, 712 F.3d 136 (2d Cir. 2013)...........................23

Flo & Eddie, Inc v. Sirius XM Radio Inc.,
  No. 13 CIV. 5784 CM, 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015)......................................22

In re Food Mgmt. Grp., LLC,
  2015 WL 327953 (S.D.N.Y. Jan. 23, 2015) ........................................................13

In re Futter Lumber Corp.,
    473 B.R. 20 (E.D.N.Y. 2012) ......................................................................13

Harp v. City of New York,
    No. 01 Civ. 6604 (JGK), 2008 WL 2971702 (S.D.N.Y. July 31, 2008) ................................17

In re Hawker Beechcraft, Inc.,
    No. 12-11873, 2013 WL 6673607 (S.D.N.Y. Dec. 18, 2013) .................................23

Henny v. Comm'r of Soc. Sec.,
    15-CV-629 (RA)(KNF), 2015 WL 9659981 (S.D.N.Y. Dec. 17, 2005) ...............................20

Holmes v. Fischer,
    No. 09-CV-00829S (F), 2013 WL 3187083 (W.D.N.Y. June 20, 2013)................................18

Jones Inlet Marina, Inc. v. Inlima,
    204 F.R.D. 238 (E.D.N.Y. 2001) ......................................................................19

Katz v. Mogus,
    No. 07 CIV. 8314 (PKC)(KNF), 2012 WL 263462 (S.D.N.Y. Jan. 25, 2012)......................18

Keating v. Leviton Mfg. Co.,
    No. 06-CV-6027(JFB)(ARL), 2009 WL 234654 (E.D.N.Y. Jan. 30, 2009) ..........................17

Kernisant v. City of New York,
    225 F.R.D. 422 (E.D.N.Y. 2005) ......................................................................17

Klinghoffer v. S.N.C. Achille Lauro,
    921 F.2d 21 (2d Cir. 1990)....................................................................13, 22

In re Lehman Bros. Holdings, Inc.,
    422 B.R. 403 (Bankr. S.D.N.Y. 2009) .................................................................13

In re Lloyds's Am. Trust Fund Litig.,
    No. 96-1262, 1997 WL 458739 ......................................................................17

Magallanez v. Eng'rs & Scientists of Cal.,
    No. 2:11-CV-03466-GEB-EFB, 2013 WL 5486825 (E.D. Cal. Sept. 30, 2013) ...................22

Merisier v. Comm'r, Soc. Sec. Admin.,
    No. 11 CV 1168 RJD, 2012 WL 3230449 (E.D.N.Y. Aug. 6, 2012) ......................................17

Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors
    of Enron Corp.,
    No. 02 CIV. 6274 (GBD), 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003) ...........................23

Mwani v. Bin Laden,
    302 F.R.D. 22 (D.D.C. 2014).........................................................................19

Nauman v. Rensselaer Polytechnic Inst.,
    No. 07-CV-0740, 2010 WL 1257876 (N.D.N.Y. Mar. 26, 2010) ...........................................17

New Jersey Reg'l Council of Carpenters v. D.R. Horton, Inc.,
    2011 WL 1322204 (D.N.J. Mar. 31, 2011)................................................................................22

Nicosia v. United States,
    No. 11-CV-5069 JS GRB, 2014 WL 2957496 (E.D.N.Y. July 1, 2014)................................17

Oliner v. McBride's Indus., Inc.,
    412 F. Supp. 490 (S.D.N.Y. 1975) ........................................................................................22

Padilla v. Maersk Line, Ltd.,
    721 F.3d 77 (2d Cir. 2013)....................................................................................................20

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship,
    507 U.S. 380 (1993)..............................................................................................18, 19, 20

Reese v. BP Exploration (Alaska) Inc.,
    643 F.3d 681 (9th Cir. 2011) ................................................................................................22

In re Residential Capital, LLC,
    No. 14-CV-9711 RJS, 2015 WL 5729702 (S.D.N.Y. Sept. 30, 2015) .......................13, 22, 23

Rodgers v. City of New York,
    No. 05-CV-5521 CBA, 2006 WL 2943621 (E.D.N.Y. Sept. 6, 2006) ...................................17

Russell v. City of Milwaukee,
    338 F.3d 662 (7th Cir. 2003) ................................................................................................19

S.E.C. v. First Jersey Sec., Inc.,
    587 F.Supp. 535 (S.D.N.Y. 1984) ........................................................................................13

Saylor v. Bastedo,
    623 F.2d 230 (2d Cir. 1980)................................................................................................24

Silivanch v. Celebrity Cruises, Inc.,
    333 F.3d 355 (2d Cir. 2003)................................................................................................19

Smith v. Doe,
    No. 08 CIV. 10437(DFE), 2010 WL 1404099 (S.D.N.Y. Jan. 25, 2010) ..............................17

Smith v. Thebaud,
    258 F.R.D. 207 (E.D.N.Y. 2009) ....................................................................................17, 24

Staggers v. Otto Gerdau Co.,
    359 F.2d 292 (2d Cir. 1966)..........................................................................16, 19, 23

Unicorn Tales, Inc. v. Banerjee,
     138 F.3d 467 (2d Cir. 1998)...........................................................................19

United States v. Gable,
     217 F. Supp. 82 (D. Conn. 1963) ....................................................................18

Williams v. KFC Nat'l Mgmt. Co.,
     391 F.3d 411 (2d Cir. 2004) ...........................................................................19

In re WorldCom, Inc.,
     708 F.3d 327 (2d Cir. 2013)...........................................................................19

In re Worldcom, Inc.,
     No. 03 Misc. 47M-47 HB, 2003 WL 21498904 (S.D.N.Y. June 30, 2003) .....................13, 23

Zakrzewska v. The New Sch.,
     598 F. Supp. 2d 426 (S.D.N.Y. 2009)................................................................22

Zeidman v. Gen. Accident Ins. Co.,
     122 F.R.D. 160 (S.D.N.Y. 1988) .....................................................................17

**Statutes**

28 U.S.C. § 1292(b) .................................................................................12, 17, 22, 23

**Other Authorities**

Fed. R. Civ. P. 6(b) ...............................................................................17, 18, 19

Fed. R. Civ. P. 12(b)(6)...............................................................................10

Fed. R. Civ. P. 25 .................................................................................... *passim*

Fed. R. Civ. P. 25(a) ................................................................................. *passim*

Fed. R. Civ. P. 25(a)(1)..............................................................................19

Fed. R. Civ. P. 25(c).................................................................................18

Fed. R. Civ. P. 59(e) .................................................................................20

Edward S. Weisfelner, as Litigation Trustee of the LB Litigation Trust, hereby respectfully submits this opposition to the motion of Diane Currier, executor of the Estate of Richard Floor, for leave to appeal (the "Motion").

## PRELIMINARY STATEMENT

In the wake of harsh criticism by the Bankruptcy Court for her conduct in connection with her substitution as a defendant under Rule 25, Diane Currier, as executor of the estate of former defendant Richard Floor, has filed a motion for leave to appeal from the Bankruptcy Court's order denying her motion to dismiss on purported Rule 25 defects.  Her Motion is without merit and should be denied.

As an initial matter, Currier cannot satisfy the prerequisites for interlocutory review. Review requires a "controlling issue of law," and only a "pure" issue of law will do.  Since no such issue exists—Currier's argument that the Bankruptcy Court erred in finding "excusable neglect" is unabashedly fact-dependent—Currier has fabricated one.  Her efforts are unavailing. Currier's purported per se rule (under which facts that do not fall within the 90-day period for substitution under Rule 25 are ignored as a matter of law) simply is not the law, and Currier thus has failed to identify any "substantial ground" to believe that the Bankruptcy Court erred when it adopted the longstanding fact-intensive standard.

Moreover, even under Currier's proposed per se rule, resolution in her favor here would require upending factual findings, chief among them the Bankruptcy Court's finding that even *during* the 90-day period, according to the public information, an executor of Floor's estate had not been appointed.  It also would require ignoring the record evidence, detailed herein, showing that it was not until nearly two months into the 90-day period that the current plaintiff (*i.e.*, the Trustee) took over the litigation, and that, more broadly, for much of the 90-day period, the

litigation was effectively in abeyance, with the Court and the parties focused on confirmation of a plan of reorganization that would terminate the then-plaintiff's standing and assign the claims at issue here to the Trustee.  In light of these and other factual issues, Currier's attempt to reformulate the legal standard does not yield a pure issue of controlling law.

Even on her Motion's own terms, then, Currier does not approach the required showing. But there is a further reason her Motion fails:  given the Bankruptcy Court's factual findings, the estate's entitlement to relief does not depend on excusable neglect under Rule 25.  In the proceedings below, the request for an extension and substitution under Rule 25 was an alternative form of relief.  The Trustee first requested that the caption be amended to reflect that Currier, through counsel, already had consented to substitution, and the case had been proceeding on that basis for months.  Currier largely omits mention of the conduct pursuant to which she, through counsel, consented to the substitution of the Legal Representative of the Estate of Richard Floor as a party-defendant.  It is that course of conduct that in no small part provoked the cautious and measured Bankruptcy Court to characterize Currier and her counsel's actions as "troubl[ing]" and—unprompted by the Trustee—to invoke repeatedly the notion of sanctions (albeit while disclaiming a view).

In particular, Currier omits mention that she, through her counsel, consented, without any reservation of rights whatsoever, to the filing of an Amended Complaint that named the "Legal Representative of the Estate of Richard Floor" as a defendant; consented to a case management order that named the Estate of Richard Floor as a defendant; and participated through her counsel in a hearing where the Bankruptcy Court asked defense counsel to identify potential deficiencies in the draft proposed complaint so plaintiff could put its "best pleading foot forward" and identified no substitution issues.  Currier further omits to mention that when she was confronted

2

with this course of conduct, upon her filing of a motion to dismiss, she took the position that she was not "contemporaneously aware" of what her attorneys were doing on her behalf.  Of course, it is hornbook law that a client cannot simply claim ignorance of its attorneys' actions and evade responsibility, as the Bankruptcy Court noted.  Thus, Currier has now exchanged her story of ignorance for a new story:  when her counsel were offering consents, in actuality they were deliberating exercising a purported ethical obligation to hide the ball.

Whether Currier's latest story can be squared with her actual conduct is an issue for another day.  For while her latest explanation and her substantive argument on excusable neglect—based on such contentions as, the Trustee should not have believed what it was told by the Probate Court, a futile phone call placed three days earlier would change the analysis, and so forth—fall well short on the merits, the merits are not at issue here.  At issue here is whether Currier has identified a pure issue of law as to which there exist substantial grounds for doubt that the Bankruptcy Court adopted the correct legal standard.  She has not.

*     *     *

Currier invokes "justice" in support of her Motion.  It should be remembered, however, that Floor was among those personally responsible for a failed leveraged buyout that was predicated on fabricated earnings projections and that led to billions of dollars of harm to creditors.  That Currier was not able to secure a quick release for Floor's legatees is not an "extraordinary circumstance" justifying interlocutory review.   As the Second Circuit has explained, Rule 25 was not intended to bar otherwise meritorious claims.  It was intended to avoid prejudice resulting from doubt as to whether a party still intends to press claims following a death.  Here, Currier and her attorneys were at all times aware that the claims against Floor would continue to be prosecuted following plan confirmation.  Indeed, Currier even consented to

3

the Trustee's filing of an amended complaint naming the Legal Representative of the Estate of Richard Floor as party-defendant.  Currier cannot establish any of the prerequisites for interlocutory review, and her failure to secure an unjustified windfall is not an "extraordinary circumstance" justifying review.  The Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The proceeding below arises from the January 2009 collapse of LyondellBasell Industries AF S.C.A. ("LBI") as a direct result of a leveraged buy-out ("LBO") of Lyondell Chemical Company ("Lyondell"), formerly North America's third-largest independent, publicly traded chemical company.  See Decision and Order on Trustee's Motion to Amend the Caption, and Motion of Diane Currier, as Executor of the Estate of Richard Floor (Deceased), to Dismiss [D.I. 699][1] ("Decision") at 1.

To finance the LBO, the acquiring company, a Luxembourg entity controlled by investor Leonard Blavatnik ("Blavatnik") and then known as Basell AF S.C.A ("Basell"), saddled LBI with approximately $22 billion in debt.  Id.  As alleged in the Amended Complaint, the financial case for the transaction was based upon EBITDA projections that were fraudulent, having been deliberately inflated by many billions of dollars under the direction of Lyondell's CEO and Chairman as soon as it became clear that Lyondell was a target for acquisition.  See Exh. 2 at ¶¶ 144-162.[2]  Following the Lyondell Board's vote to approve the Merger based upon the fraudulent projections, the projections were then further manipulated by Basell personnel operating under Blavatnik's direction in the months prior to the transaction being consummated

---

[1] References to "D.I." refer to docket entries in Weisfelner v. Blavatnik, Adv. Pro. No. 09-1375 (Bankr. S.D.N.Y.).

[2] References to "Exh. __" refer to exhibits to the Declaration of Sigmund S. Wissner-Gross dated February 9, 2016 ("Wissner-Gross Declaration"), filed herewith.  References to "Exh. 1, Exh. __" refer to exhibits attached to Exhibit 1 of the Wissner-Gross Declaration.

pursuant to a merger (the "Merger").  Id. ¶¶ 178-183, 226-235, 275-280.  Within weeks of the Merger closing, the combined company, LBI, entered a full-blown liquidity crisis from which it never recovered.  Id. ¶¶ 288-324.  Within 18 months of the Merger, Lyondell and 78 affiliates filed for bankruptcy under Chapter 11.  Decision at 1.[3]

Former defendant Richard Floor, a partner at the law firm Goodwin Procter, was one of the managers of Basell AF GP S.a.r.l., an entity created under Luxembourg law that was the manager of Basell prior to the Merger ("Basell GP").  Id. at 3; Exh. 2 ¶¶ 55, 365.  Floor and his fellow managers (the "GP Managers") acted at the direction of Blavatnik to provide all necessary approvals for the Merger and associated financing and were involved in the planning and execution of Merger strategy, continuing to press forward to complete the transaction at the direction of Blavatnik despite knowing that the resulting company was undercapitalized, would have insufficient liquidity to meet its obligations and would be unable to meet its financial obligations.  Exh. 2 ¶¶ 178, 205-206, 221-235, 273-274.  Floor also served on the post-Merger Supervisory Board of LBI, the equivalent of a board of directors.  Id. ¶ 55.

## A.    The Initial Committee Action

The proceeding below was initiated on July 22, 2009, when the Official Committee of Unsecured Creditors (the "Committee") obtained standing to file an adversary proceeding on behalf of the Debtors' estates naming parties responsible for the planning, financing and execution of the LBO.  See Exh. 2 ¶ 11.  The proceeding (the "Committee Action") was bifurcated into two phases, with Phase I prioritizing claims against, inter alia, the institutions that financed the Merger (the "Financing Party Defendants").  See Exh. 3.  Phase II included, inter alia, claims to be asserted against fiduciaries of the Debtors (including Floor) and against

---

[3] About 3 months later, LBI and another affiliate became bankruptcy debtors (Lyondell, LBI and such of their affiliates that became debtors under the Code, the "Debtors").  Exh. 2 ¶ 2.

shareholders who had received approximately $12 billion in consideration consisting of loan proceeds borrowed using the assets of the Debtors as collateral. Id. ¶ 3(b). The initial complaint asserted claims against Floor arising under Luxembourg law and denominated as claims for mismanagement and tort. See Complaint ¶¶ 319-334 [D.I. 1]. These claims were asserted against Floor in his capacity as a GP Manager and as a member of the Supervisory Board of LBI. See id. During Phase I, the Goodwin Procter firm appeared on behalf of Floor and participated in discovery on his behalf. See Exh. 4.

###   B.   Suggestion of Death Filed With Litigation Effectively in Abeyance

On December 4, 2009, the Debtors announced an agreement with the Financing Party Defendants to settle the claims against those parties. The Bankruptcy Court adjourned the then-imminent Phase I trial in contemplation of the proposed settlement which was, however, opposed by the Committee as being unreasonably low. See Exh. 1, Exh. A at 107:5-10. As a result, the Committee Action remained on hiatus until the contested settlement proceedings were resolved, an amended settlement agreement was approved by the Bankruptcy Court on February 17, 2010, and work towards incorporating the settlement into a plan of reorganization was undertaken. On March 6, 2010, the Debtors filed a Third Amended Plan of Reorganization (the "Plan"), incorporating the terms of the settlement agreement. See Third Am. Discl. Stmt. at 53-56 [Bankr. No. 3988].[4] Pursuant to the proposed Plan, unresolved claims in the initial complaint (including the claims against Floor) were to be assigned to a litigation trust funded through the Plan. Further proceedings in the Committee Action continued to be in abeyance pending plan confirmation and appointment of a litigation trustee.

---

[4] References to "Bankr. No." refer to docket entries in the bankruptcy case captioned In re Lyondell Chem. Co., et al., Case No. 09-10023 (Bankr. S.D.N.Y.).

On March 8, 2010, during the hiatus in the Committee Action resulting from the contested settlement and resolution of claims against the Financing Party Defendants, Goodwin Procter filed a Suggestion of Death relating to Floor (the "Suggestion of Death"). See Decision at 4. As the Bankruptcy Court explained:

> The Trustee states that the Suggestion of Death was filed during a period when the prosecution of this action, for all practical purposes, was in abeyance, and when the focus of all parties, including the [Committee], was directed toward the confirmation and implementation of the Debtors' chapter 11 plan. In addition, the Trustee points out that it was understood that the Creditors' Committee's standing to pursue the claims asserted in this adversary proceeding would be terminated, and that any claims would then be prosecuted by the Creditors' Committee's successor, a trustee, who had not yet been appointed at that time. *By reason of its knowledge of the proceedings on its watch, the Court knows all of these statements to be true.*

Decision at 4 n.9 (emphasis added).

On March 10, 2010, an amended settlement agreement was reached. See Exh. 5. The Plan was confirmed on April 23, 2010 and became effective on April 30, 2010. See Exh. 6. On April 30, 2010 *i.e.*, nearly two months after the filing of the Suggestion of Death, the LB Litigation Trust was established and the Debtors assigned claims against the non-settling defendants to the LB Litigation Trust. See Exh. 7 at § 5.7. At this time, appointment of Currier as executor of Floor's estate had not been publicly docketed by the Probate Court. Decision at 4. According to Currier (who was a partner at Goodwin Procter at the time of her appointment), however, she was aware that she had been appointed as executor by this date. See Currier at 8.

On or about June 10, 2010, after the Trustee had attempted, without success, to determine whether Currier had been appointed executor, Brown Rudnick paralegal Nancy Tinsley (who was based in Providence) was instructed to contact the Middlesex County, Mass. probate court handling Floor's estate (the "Probate Court") and determine whether an executor for Floor's

7

estate had been appointed.  Exh. 8 ¶ 3.   Tinsley contacted the Probate Court by phone on July 1, 2010 and July 22, 2010 and was informed that Currier had not been appointed.  Id. ¶ 5.

C.      **The Amended Complaint, Case Management Order and Status Conference**

On July 2, 2010, the Trustee circulated a draft proposed complaint to counsel for the non-settling defendants, including Goodwin Procter.  See Exh. 1, Exh. B.  This draft complaint was based on the Committee Action, but was materially amended in numerous respects.  Among the amendments was the elimination of the claims against the Financing Party Defendants and other parties released under the Plan and the substitution of the Trustee as plaintiff.  See id.  The draft complaint also replaced Floor with the "The Legal Representative of the Estate of Richard Floor (deceased)."  See id.  The draft also referenced by name the identity of the likely executor of Floor's estate (Currier).  Id.  This proposed amended complaint could not have superseded the initial complaint without a motion seeking leave of the Court to amend.

Like the initial complaint, the proposed amended complaint asserted mismanagement and tort claims under Luxembourg law, now against Floor's estate.  See Exh. 1., Exh. B (Counts VI and VII).  Further drafts of the proposed Trustee complaint were circulated on July 9, 2010 and July 23, 2010, both referencing Currier by name (first in brackets and then in a footnote) and listing among the defendants "The Legal Representative of the Estate of Richard Floor (deceased)."  See Exh. 1, Exhs. C, L.  The footnote stated:  "Upon information and belief, although not yet formally appointed, Dianne Currier will be named as the Executrix of the Estate of Richard Floor.  It is the intention of the LB Litigation Trust to name as defendant the person who shall be appointed the legal representative of the Estate of Richard Floor."  See id.[5]

---

[5] Though provided with a copy of such proposed Amended Complaint, Currier's counsel did not advise the Trustee's counsel that, in their view, Currier had in fact already been appointed.  Currier's suggestion that her counsel was prohibited from being candid with the Trustee is disingenuous.  Currier's counsel was required to not be misleading with both the Bankruptcy

In July 2010, counsel to the Trustee and to the defendants negotiated an amended Case Management Order ("Amended CMO").  See Exh. 9.  Counsel circulated drafts of the proposed Amended CMO on July 9, 2010, July 13, 2010, July 15, 2010, July 20, 2010 and July 21, 2010.  See Exh. 1., Exhs. D-G, I-K.  In each draft, the Estate of Richard Floor was included among the defendants.  The Amended CMO also noted that two of the defendants had not participated in negotiating the CMO and one had not appeared in the action, but included no such qualification regarding Currier or the Estate of Richard Floor.  See Exh. 9 ¶ 3(e) n. 1.

On July 14, 2010, counsel participated in a status conference concerning the proposed Trustee complaint and proposed Amended CMO.  At the conference, the Bankruptcy Court requested the assistance of counsel with regard to procedure going forward, stating:

> I want the two sides to help me understand what you agree on and what you disagree on in terms of procedure. . . . Just let me know whether we're going to be proceeding with an amended complaint, . . . whether the litigation trust has the ability to proceed under it or needs to move to get my permission to file the amended complaint . . . [.]

Exh. 10 at 3:7-3:16.  On this topic, counsel for certain former Lyondell directors spoke to "clarify [that] in the event we don't reach an agreement on the proposed CMO, all parties are reserving all rights to request the plaintiffs to actually file a motion for leave rather than consenting to the filing of the new proposed amended complaint."  Id. at 7:5-7:10.  Counsel from Goodwin Procter (Dittmar) represented that he appeared on behalf of "six individuals who are board members. . . ."  Id. at 10:3-10:6.  Goodwin Procter represented (i) Coleman, (ii) Gray, (iii) Shand, (iv) Duc and (v) Baker—the sixth Board member was Floor.

Later at the hearing, Dittmar stated:  "I agree . . . about the expectation we will reach agreement that will allow for the filing of an amended complaint in short order and the

Court and the Trustee's Counsel, *inter alia*, with respect to court filings and representations to the court.

agreement on the terms of the comprehensive CMO." Exh. 10 at 12:8-12:13. In statements regarding contemplated dispositive motions, Dittmar addressed the court regarding the parties on whose behalf he appeared and answered affirmatively when asked by the court whether he was speaking of Rule 12(b)(6) motions. The Court asked for "a preview as to how, on a case that's so factually intensive, a 12(b)(6) might be appropriate." Id. at 10:22-10:24. Dittmar mentioned a possible *forum non conveniens* motion and other claims based on Luxembourg law but made no mention of any other grounds for dismissal. Id. at 10:25-12:13. Addressing another attorney, the Bankruptcy Court stated: "[I]f they're going to do an amended complaint anyway, have you identified that perceived deficiency to your opponent and suggested to them that they put their best pleading foot forward . . . ?" Id. at 13:23-14:1. Dittmar did not during the status conference, or at any time before filing, inform the Trustee or Bankruptcy Court of any perceived deficiencies in the procedure whereby the Trustee would file an amended complaint wherein Floor had been replaced by the "Legal Representative of the Estate of Richard Floor." See id. Nor did counsel reserve any rights with respect to the filing of such proposed amended complaint. See Decision at 17-18. Nor did Currier did correct the apparent inaccuracy reflected in the footnote concerning the Floor estate, that an executor had not been appointed. See id.

On July 21, 2010, defense counsel that had undertaken to communicate on behalf of other defendants reported to the Trustee that all defendants listed in the Amended CMO were in agreement with its provisions, including the Estate of Richard Floor. See Decision at 5.

On July 23, 2010, following these reviews with defense counsel and the Bankruptcy Court, the Trustee filed the amended complaint. See Exh. 2. On August 2, 2010, Brown Rudnick paralegal Tinsley learned that the Probate Court had docketed Currier's appointment on the date that the Amended Complaint was filed, July 23, 2010. See Decision at 6; Exh. 8 ¶ 7.

10

On September 24, 2010, various defendants filed motions to dismiss.  Among them was a motion filed by Currier, in which she argued that the claims against her should be dismissed because, *inter alia*, she had not been properly substituted as a defendant pursuant to Rule 25(a). <u>See</u> Mem. in Support of Mot. to Dismiss at 6-8 [D.I. 426].  On November 16, 2010, the Trustee filed a cross-motion seeking two alternative forms of relief:  (i) amendment of the caption to name Currier, to reflect Currier's consent to her substitution, or, in the alternative, (ii) an extension of the time for substitution under Rule 25 and substitution thereunder of Currier (the "<u>Trustee Cross-Motion</u>") [D.I. 448].  On March 10, 2011, the Bankruptcy Court held argument on defendants' motions to dismiss, including that filed by Currier.  <u>See</u> Decl. of John O. Farley (Jan. 19, 2016) [D.I. 702-1] ("<u>Farley Decl.</u>"), Exh. 6.

### D.   Status of Litigation and the Decision Below

While the Bankruptcy Court did not render decisions on defendants' motions to dismiss until January 2016, the action in the interim progressed substantially toward being trial-ready, with extensive fact discovery completed and closed in 2011.  <u>See</u> Exh. 11.[6]

On January 4, 2016, the Bankruptcy Court rendered a decision granting the Trustee's request to extend the time, amending the caption to name Currier, and denying Currier's motion to dismiss under Rule 25.  In its decision, the Bankruptcy Court examined the record evidence and found that the Trustee's motion was filed "about 23 weeks late," but that "the reasons underlying that—delays by Floor's probate court in docketing Currier's appointment; inaccurate information provided to the Trustee by the probate court; and the withholding of information as

---

[6] Extensive discovery already had been taken in Phase I of the underlying proceeding.  Following Plan confirmation, appointment of the Trustee and filing of the Amended Complaint, the parties engaged in substantial further discovery, with millions of pages of documents produced, and numerous depositions taken and expert reports exchanged.

to Currier's appointment by counsel for Currier and Floor—provide more than sufficient basis for finding excusable neglect." Decision at 3; 16-19.[7]

On January 19, 2016, Currier filed her Motion.

## ARGUMENT

Currier's Motion should be denied because, *inter alia,* (i) she cannot identify any "controlling question of law" as to which there is a "substantial ground" to believe the Bankruptcy Court erred and (ii) an immediate appeal would not materially advance the ultimate termination of the litigation. Moreover, examination of "exceptional circumstances" does not justify interlocutory review, and, if anything, undercuts Currier's position.[8]

## I.    Currier Satisfies None of the Prerequisites of 28 U.S.C. § 1292(b).

Leave to appeal a Bankruptcy Court's interlocutory order may be granted only if each of the three factors set forth in 28 U.S.C. § 1292(b) is satisfied, see In re Adelphia Commc'ns Corp., 333 B.R. 649, 658 (S.D.N.Y. 2005), namely, if (i) the appeal presents "a controlling question of law," (ii) "as to which there is substantial ground for difference of opinion" and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Currier can satisfy none of these prerequisites.

### A.    Currier Identifies No "Controlling Issue of Law" as to Which There is "Substantial Ground" to Doubt the Ruling Below.

With respect to the threshold prerequisite of a controlling issue of law, only a "pure" issue of law will trigger review. See Century Pac., Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d

---

[7] On the day it issued its decision denying Currier's motion, the Bankruptcy Court issued four additional opinions addressing motions filed by a multitude of defendants. See Bankr. S.D.N.Y. Adv. Pro. 09-1375, Docket Nos. 696-700. No other defendants sought leave to appeal.

[8] Further, as noted above, while Currier inaccurately claims that a trial is years away, all fact discovery in the underlying action has been completed, and the Trustee, who is seeking recovery of billions of dollars from defendants in the action, will be prejudiced if Currier is allowed to delay prompt completion of the underlying proceeding.

369, 371 (S.D.N.Y. 2008); In re Futter Lumber Corp., 473 B.R. 20, 27 (E.D.N.Y. 2012); In re Worldcom, Inc., No. 03 Misc. 47M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).   An order therefore is not appropriate for interlocutory review if the appeal would "present a mixed question of law and fact."   See S.E.C. v. First Jersey Sec., Inc., 587 F.Supp. 535, 536 (S.D.N.Y. 1984); see also In re Residential Capital, LLC, No. 14-CV-9711 RJS, 2015 WL 5729702, at *5 (S.D.N.Y. Sept. 30, 2015).   Similarly, an order does not qualify for review if resolution of the issue is "within the discretion of the bankruptcy court" and "made on a case by case basis."   Worldcom, Inc., 2003 WL 21498904, at *10.   Instead, to qualify for review, the reviewing court must be able to "decide quickly and cleanly without having to study the record." Century Pac., 574 F. Supp. 2d at 371; see also In re Lehman Bros. Holdings, Inc., 422 B.R. 403, 407 (Bankr. S.D.N.Y. 2009); Futter Lumber Corp., 473 B.R. at 27.

Further, "for there to be a 'substantial ground for difference of opinion' . . . there must be 'substantial doubt' that the [lower court's] order was correct." Century Pac., 574 F. Supp. 2d at 372; see also In re Fairfield Sentry Ltd. Litig., 458 B.R. 665, 673 (S.D.N.Y. 2011) ("'substantial ground for a difference of opinion' must arise out of a genuine doubt as to the correct applicable legal standard relied on in the order").   A substantial ground ordinarily is found to exist only where there is "conflicting authority on the issue" or "the issue is . . . particularly difficult and of first impression."   In re Food Mgmt. Grp., LLC, 2015 WL 327953, at *3 (S.D.N.Y. Jan. 23, 2015); see also  Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990).

1.    Currier's Appeal Does Not Raise a "Pure" Issue of Law.

Currier seeks leave to appeal the Bankruptcy Court's order finding that "excusable neglect" justified an extension of Rule 25's 90-day period under the circumstances of this case. This appeal does not present a pure issue of law, but rather a mixed question of law and fact.

Currier herself concedes the point:  in her words, "whether 'excusable neglect' has been established under Rule 6(b) is necessarily a fact-specific inquiry."  Currier at 16.  And the argument portion of her brief only underscores her concession.  In attempting to demonstrate the existence of "substantial grounds" to doubt the lower court ruling, Currier includes a section entitled "The Bases Underlying the Court's Findings Cannot Be Supported," in which she repeatedly takes issue with the key factual underpinnings of the holding below.  See Currier 20-23.  Complaining of purported "factual . . . acrobatics" and "disregard of the . . . evidence," Currier devotes page after page to attempting to re-write the record in an effort to reverse the Bankruptcy Court's factual findings, sorting through "date-stamped cop[ies]" of Probate Court documents, paragraphs of "sworn declaration[s]" that purportedly contradict statements of Probate Court staff, and so forth.  See id. at 20-23.  Currier's selective and self-serving effort at re-writing the record is no more effective here than it was below, but for present purposes, all that matters is that these are *factual* assertions.

2.     Currier's Attempt to Re-Frame the Standard into a Per Se Rule is Unavailing.

Presumably aware that a mixed question of law and fact does not trigger review, Currier attempts to reformulate the legal standard, purporting to convert a highly fact-intensive and discretionary standard into a "per se" rule, under which the Court can resolve this matter with little or no attention to the factual record.  See Currier at 10, 16.  Her attempt fails, because (i) even Currier's purported per se rule triggers fact disputes here, and in any event, (ii) her proposed reformulation simply is not the law, *i.e.*, she has not identified any "substantial ground" to doubt the Bankruptcy Court's decision to adopt the longstanding fact-intensive legal standard.

(a)     Even Currier's Per Se Approach Turns on Fact Issues

Even Currier's reformulation of the standard does not present a pure issue of law here.  Currier's own purported "Question Presented" illustrates the point:  built into her "Question" are

14

multiple factual premises, among them that (i) "events occurring solely after the expiration of the 90-day deadline" were the basis of the ruling and (ii) "plaintiff . . . proffers no excuse for failing to act during [the 90 days], except that it was a 'very active period . . . .'"  Currier at 10.  These factual premises are directly contradicted by factual findings below and the record evidence.

First, Currier's presumption that no justifications arose during the 90-day period is contradicted by the Bankruptcy Court's finding that even *during* the 90-day period, according to the public information, an executor of Floor's estate had not been appointed.  See Decision at 16 ("Currier was apparently appointed . . . but that fact was unknowable to the public, with appointment not having been docketed.").  Currier disputes this finding, arguing that the declaration submitted by the Trustee's paralegal should be disregarded in favor of a declaration in which Currier states that she was able to obtain a document reflecting her appointment dated during the 90-day period.  See Currier at 20.  Such contention is plainly factual in nature, and only underscores that even her per se rule requires upending factual findings.

Second, Currier's premise that no justifications arose during the 90-day period ignores an additional justification argued and briefed by the Trustee below and noted by the Bankruptcy Court—the status of the litigation during the 90-day period.  When Currier contends that the sole reason offered by the Trustee for not moving to substitute during the 90 days was that it was "a busy time at his law firm," see Currier at 4, she is wrong.  As the full transcript shows, the Trustee's counsel explained that during the 90-day period, the litigation "for all practical purposes, was in abeyance, when the focus of the committee, as well as the other parties, was on the settlement of the litigation and confirmation and implementation of plan."  See Farley Decl., Ex. 6 at 249:13-22.  Counsel further explained that at the time the 90-day period began to run, the Trustee had not yet been appointed as plaintiff (and would not be until the effective date of

the plan, which was nearly two months into the 90-day period).  See id. at 248:18-249:22.  While the Bankruptcy Court found that the case did not turn on this justification (in light of, *inter alia*, the fact that during the 90-day period, Currier had not been appointed, according to the public information), the Bankruptcy Court found as a factual matter that the litigation being in abeyance was "*one of the reasons underlying the delay*."  Decision at 15 & 4 n.9 (emphasis added).[9]

Thus, the premise that would make Currier's per se rule outcome-determinative here—that all of the justifications for delay arose only after the 90-day period had run—is a *factual* premise, and one that is contradicted by Bankruptcy Court findings and record evidence.  Currier has not identified a pure issue of controlling law.

(b)   Currier's Proposal of a Per Se Rule Does Not Constitute Substantial Ground to Doubt the Bankruptcy Court's Legal Standard.

Currier also has failed to identify any "substantial ground" to believe that the Bankruptcy Court erred when it chose to apply the longstanding fact-intensive approach.  Currier proposes a "bright line" or "per se" rule under which a court evaluating excusable neglect in a Rule 25 case may only consider facts falling within the 90-day period following the filing of a suggestion of death and must disregard, as a matter of law, everything occurring thereafter.  See Currier at 10, 16.  But Currier provides no support for this proposed reformulation, and it runs directly contrary to the long-standing approach for evaluating excusable neglect in Rule 25 cases and beyond.

As an initial matter, Currier's proposed "per se" approach is antithetical to the longstanding practice and theory of evaluating excusable neglect in Rule 25 cases.  In the Rule 25 context, the "excusable neglect" standard is "flexible," because Rule 25 "was not intended to act as a bar to otherwise meritorious actions."  See Staggers v. Otto Gerdau Co., 359 F.2d 292,

---

[9] While the Trustee began to make efforts with respect to determining whether an executor had been appointed prior to June 7, 2010, it is conceded by Currier, in any event, that her counsel did not disclose to the Trustee that she, in fact, had been appointed.

16

296 (2d Cir. 1966).[10]  Thus, courts are afforded "considerable discretion in addressing the timing of substitution in the event of the death of a party."   Smith v. Thebaud, 258 F.R.D. 207, 210 (E.D.N.Y. 2009); see also Zeidman v. Gen. Accident Ins. Co., 122 F.R.D. 160, 161 (S.D.N.Y. 1988); Kernisant v. City of New York, 225 F.R.D. 422, 431 (E.D.N.Y. 2005).  Because the ultimate determination is "an equitable one," and courts must "consider all relevant circumstances," see Harp v. City of New York, No. 01 Civ. 6604 (JGK), 2008 WL 2971702, at *2 (S.D.N.Y. July 31, 2008), the inquiry into whether excusable neglect has been shown is fact-specific.[11]

---

[10]  Currier states that "[c]ourts routinely dismiss cases with prejudice where there is a failure to comply with the time period specified by Rule 25(a)," see Currier at 14 & n.16, but the above-cited cases make plain that courts may permit substitution outside the 90-day rule under an excusable neglect analysis.  Currier's authority is not to the contrary.  See Nicosia v. United States, No. 11-CV-5069 JS GRB, 2014 WL 2957496, at *2 (E.D.N.Y. July 1, 2014) ("Federal Rule 6(b) allows for an extension of the ninety-day period."); Merisier v. Comm'r, Soc. Sec. Admin., No. 11 CV 1168 RJD, 2012 WL 3230449, at *2 (E.D.N.Y. Aug. 6, 2012) (same). Instead, the authority cited by Currier stands for the proposition that dismissal may be warranted where a plaintiff both fails to move for substitution and fails to seek to enlarge the time for substitution pursuant to Rule 6(b).  See Nauman v. Rensselaer Polytechnic Inst., No. 07-CV-0740 (GLS/RFT), 2010 WL 1257876, at *1 (N.D.N.Y. Mar. 26, 2010); Keating v. Leviton Mfg. Co., No. 06-CV-6027(JFB)(ARL), 2009 WL 234654, at *1 (E.D.N.Y. Jan. 30, 2009); Smith v. Doe, No. 08 CIV. 10437(DFE), 2010 WL 1404099, at *2 (S.D.N.Y. Jan. 25, 2010); see also Rodgers v. City of New York, No. 05-CV-5521 CBA, 2006 WL 2943621, at *1 (E.D.N.Y. Sept. 6, 2006) (no Rule 25 motion made and counsel indicated claims would not be pursued).  Such principle has little relevance here, given, *inter alia*, the Trustee Cross-Motion.

[11]  None of the cases cited by Currier, see Currier at 12, hold that merely because a Rule 25(a) order, if reversed, will result in dismissal, it therefore necessarily involves a "controlling question of law" that warrants certification under § 1292(b).  First, none of the cases cited by Currier holds that an "excusable neglect" analysis in a Rule 25(a) case presents a pure issue of law sufficient to justify interlocutory review.  Moreover, with respect to the requirement that the issue of law be "controlling," the cases involve courts' treatment as controlling those issues that have the potential to terminate or materially impact the *entire* litigation.  For example, In re Lloyds's Am. Trust Fund Litig., No. 96-1262, 1997 WL 458739, cited by Currier, the court found that reversal of the ruling as to the enforceability of the forum selection clauses was a controlling issue of law because it would result in dismissal of an entire group of "complex consolidated cases" such that there could be "no risk that the Court of Appeals will be burdened by subsequent appeals."  Other cases cited by Currier similarly involve issues impacting entire litigations.  See Burka v. Aetna Life Ins. Co., 87 F.3d 478, 480 (D.C. Cir. 1996) (granting

17

Even in cases evaluating "excusable neglect" beyond Rule 25, the analysis necessarily is fact-intensive—as Currier herself admits.  <u>See</u> Currier at 16 ("[W]hether 'excusable neglect' has been established under Rule 6(b) is necessarily a fact-specific inquiry."); <u>see also</u> <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship</u>, 507 U.S. 380, 392, 395 (1993) (excusable neglect is an "elastic concept," requiring consideration of "all relevant circumstances," including "reason for the delay"); <u>Katz v. Mogus</u>, No. 07 CIV. 8314 (PKC)(KNF), 2012 WL 263462, at *5 (S.D.N.Y. Jan. 25, 2012); <u>Canale v. Manco Power Sports, LLC</u>, No. 06 CIV. 6131 (PKL), 2010 WL 2771871, at *2 (S.D.N.Y. July 13, 2010) (same); <u>cf.</u> <u>Holmes v. Fischer</u>, No. 09-CV-00829S (F), 2013 WL 3187083, at *6 (W.D.N.Y. June 20, 2013) ("[T]he district court uses its discretion in applying the excusable neglect standard to the factual circumstances.").

Against this overwhelming body of authority in Rule 25 cases and beyond showing that the analysis is necessarily fact-intensive, discretionary and equitable, Currier offers essentially nothing.  She cites no decision applying a 90-day per se rule in a Rule 25 case.  She cites no decision applying a per se rule *of any kind* in a Rule 25 case.  Instead, Currier offers only citations in support of an attempt to suggest a kind of "conceptual" per se approach, under which facts not relating to the reasons for delay are, on that ground, excluded from consideration.  In support of this conceptual per se approach Currier offers very little case law—and nothing that

---

petition for interlocutory appeal where reversal of district court's order allowing substitution under Rule 25(c) would destroy diversity and result in remand of the entire case to state court); <u>In re Fairfield Sentry Ltd. Litig.</u>, 458 B.R. 665, 673 (S.D.N.Y. 2011) (accepting appeal from bankruptcy court decisions involving the existence of bankruptcy jurisdiction over in excess of 200 adversary proceedings; issue regarding timeliness of removal decided in conjunction with jurisdictional issues involving the other cases); <u>Al-Jundi v. Estate of Rockefeller</u>, 757 F. Supp. 206, 207 (W.D.N.Y. 1990) (grant of leave to appeal denial of dismissal under Rule 25(a) where due to pending appeals by all other defendants on question of qualified immunity, there existed the possibility that the entire case, against all defendants, would end, "saving the time and efforts of all"); <u>United States v. Gable</u>, 217 F. Supp. 82 (D. Conn. 1963) (certifying a ruling allowing a False Claims Act claim to continue rather than abate due to death of the defendant as controlling).  <u>See also</u> Part I-B, <u>infra</u>.

benefits her position.  She relies heavily upon Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355

(2d Cir. 2003), but that leave-to-appeal case[12] adopts a "hard line" approach that is not applied in

a Rule 25 cases.  And even that "hard line" approach requires examination of the "reason for the

delay," an inherently factual analysis.  See Silivanch, 333 F.3d at 368-70 (concluding "on these

facts" that the movant had not shown excusable neglect).  The other cases upon which Currier

relies are likewise unhelpful to her position.  See, e.g., Williams v. KFC Nat'l Mgmt. Co., 391

F.3d 411, 417 (2d Cir. 2004) (noting that in some cases, the proffered reason for the movant's

delay might be "deemed inadequate"); In re DPH Holdings Corp., 434 B.R. 77, 83-85 (S.D.N.Y.

2010) (examining the proffered excuses and discounting one of them on the basis that it did not

relate to the movant's explanation for why it failed to meet the deadline).

Indeed, in Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248 (2d Cir. 1997),

cited by Currier, the Second Circuit explains that while prior to the Supreme Court's decision in

Pioneer, the Second Circuit had adopted certain absolute rules in excusable neglect cases (as

---

[12] Because Silivanch involved a late notice of appeal, strikingly different principles came into play than in a Rule 25 case. See In re WorldCom, Inc., 708 F.3d 327 (2d Cir. 2013) (in cases of belated notice of appeal, "hard line" approach strikes balance "represent[ing] an appreciation for the sanctity of final judgments in or federal judicial system and the public policy dictating that . . . matters once tried shall be considered forever settled as between the parties."). In the Rule 25 context, by contrast, the focus is on avoiding prejudice resulting from lack of notice as to whether the party intends to continue the claims, and as the Second Circuit has explained, the 90-day period was not intended to act as a bar to "otherwise meritorious actions." See Staggers, 359 F.2d at 296. The only Rule 25(a) case cited by Currier in support of the applicability of a so-called "hard line" approach did not purport to apply such an approach, and in any event, is factually inapposite. See Russell v. City of Milwaukee, 338 F.3d 662 (7th Cir. 2003) (plaintiff argued Rule 25 motion was not late, because suggestion of death was not properly served). Currier also cites authority purportedly standing for the proposition that a Rule 25(a)(1) motion filed outside of the 90-day window may not be granted unless a motion to extend is filed before such deadline expires. Currier at 17. These cases, however, merely stand for the unremarkable proposition that the court may not extend a deadline retroactively where no party has moved for such relief pursuant to Rule 6(b). See Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 470 (2d Cir. 1998) (refusing to grant belated Rule 25 motion where no party had moved for enlargement of time pursuant to Rule 6(b)); Jones Inlet Marina, Inc. v. Inlima, 204 F.R.D. 238, 240 (E.D.N.Y. 2001) (same); Mwani v. Bin Laden, 302 F.R.D. 22 (D.D.C. 2014) (same).

exemplified by the decision in <u>In re Cosmopolitan Aviation Corp.</u>,763 F.2d 507, 515 (2d Cir.1985)), following *Pioneer*, the Second Circuit's approach changed: "In short, per se rules like the one in <u>Cosmopolitan Aviation</u> do not perdure after <u>Pioneer</u>." <u>Id.</u> at 250.[13]

Ultimately, the Bankruptcy Court adopted the longstanding fact-intensive standard for evaluating excusable neglect in Rule 25 cases, and Currier offers no basis for "substantial doubt" that it was wrong to do so. Unable to identify a pure issue of law as to which there is a substantial ground for doubt, Currier's Motion should be denied.

3.     <u>Alternative Basis for Currier's Substitution for Floor.</u>

Beyond the foregoing, there exists another reason Currier has failed to identify a controlling issue of law as to which there is substantial doubt: there exists an alternative ground for Currier's substitution for Floor that is entirely consistent with the Bankruptcy Court findings, such that the Rule 25 excusable neglect issue is not controlling in any event.

As set forth above, the Trustee moved for two forms of relief: (i) amendment of the caption to name Currier, in light of her consent to the substitution of the "Legal Representative of the Estate of Richard Floor," or, in the alternative, (ii) an extension of the time for substitution under Rule 25 and substitution thereunder of Currier. While the Bankruptcy Court's reasoning focuses primarily (and Currier's Motion focuses entirely) on the Rule 25 excusable neglect issue, the Bankruptcy Court's factual findings provide an alternate basis for amending the caption to

---

[13] Currier contends that the Trustee's belated filing was caused merely by the Trustee's competing deadlines and that "[a]ttorney inattention" is insufficient. Currier at 23. As detailed above, Currier's factual premise is false—and contradicted by the Bankruptcy Court's findings. <u>See</u> Part I-A-2-(a), <u>supra</u>. Moreover, the cases cited by Currier do not support her proposition, as they are factually inapposite, <u>see</u> <u>Padilla v. Maersk Line, Ltd.</u>, 721 F.3d 77, 83 (2d Cir. 2013) (refusing to amend judgment pursuant to Rule 59(e) where movant's only ground was that it had "overlooked" another argument), or in fact demonstrate the fact-intensive nature of the inquiry, <u>see</u> <u>Henny v. Comm'r of Soc. Sec.</u>, 15-CV-629 (RA)(KNF), 2015 WL 9659981, at *7-8 (S.D.N.Y. Dec. 17, 2005) (detailing the court's "findings of fact").

name Currier.  In particular, the Bankruptcy Court found that Currier: "consented to the filing of an amended Complaint naming as a defendant the 'Legal Representative of Estate of Richard Floor'"; "consented to amendments in the Case Management Order including that estate as a defendant"; and "participated in a Court conference at which Floor-Currier Counsel raised no objections as to how the estate was named in the amended Complaint."  Decision at 17-18.  As the court continued, "Floor-Currier Counsel now contends that Currier should be let out of the litigation because naming her as the 'Legal Representative of Estate of Richard Floor' wasn't good enough.  The Court will not reward that gamesmanship."  Id. at 18.

These Bankruptcy Court findings and record evidence of consent provide ample basis for the conclusion that Currier consented to her substitution and/or waived any objection to her substitution—as the Trustee argued below.  See Trustee Cross-Motion at 8-9 (citing Anderson v. Republic Motor Inns, Inc., 444 F.2d 87, 88 (3d  Cir. 1971) (stated intention to substitute a deceased party in a pre-trial memorandum was sufficient to effect substitution under Rule 25); Kaubisch v. Weber, 408 F.3d 540, 542-43 (8th Cir. 2005) (rejecting substitution based on record facts, because every defendant rejected the proposed stipulation)).  The Bankruptcy Court's findings support consent or waiver as alternate bases for the ruling below.  For this additional reason, the Rule 25 excusable neglect issue is not a "controlling" issue of law.

B.     Review Would Not "Materially Advance Termination of the Litigation."

While the Court need not reach the issue because Currier cannot establish the first two prerequisites for interlocutory review, Currier also fails to establish the third prerequisite, that an immediate appeal would "materially advance the ultimate termination of the litigation."  As Currier herself concedes, "[t]he Motion affects only the Estate and no other Defendant.  The Estate and the other parties will continue to litigate the remainder of the case . . . ."  Currier at 2-3.  Thus, even if Currier were successful on appeal, the action would remain pending as to the

remaining defendants and none of the counts in the Amended Complaint would be dismissed. Where reversal of a lower court order would result merely in the dismissal of one of several defendants, interlocutory review does not serve the purpose of potentially avoiding protracted litigation, and courts typically deny motions for leave.  See, e.g., Magallanez v. Eng'rs & Scientists of Cal., No. 2:11-CV-03466-GEB-EFB, 2013 WL 5486825, at *4 (E.D. Cal. Sept. 30, 2013); New Jersey Reg'l Council of Carpenters v. D.R. Horton, Inc., 2011 WL 1322204, at *5 (D.N.J. Mar. 31, 2011); Oliner v. McBride's Indus., Inc., 412 F. Supp. 490, 491 (S.D.N.Y. 1975); Chas. Pfizer & Co. v. Laboratori Pro-Ter Prodotti Therapeutici S. p. A., 278 F. Supp. 148, 154 (S.D.N.Y. 1967).[14]

## II.   "Exceptional Circumstances" Do Not Justify Granting Currier Leave.

In addition to satisfying the three Section 1292(b) factors, "[a] party seeking an interlocutory appeal has the burden of showing 'exceptional circumstances.'"  Residential

[14] Currier's cases are not to the contrary.  In Reese v. BP Exploration (Alaska) Inc., 643 F.3d 681 (9th Cir. 2011), review was held to be appropriate where reversal would not only result in the dismissal of one defendant, but also would take "Reese's control claims against all remaining defendants out of the case."  Id. at 688.  In Al-Jundi v. Estate of Rockefeller, 757 F. Supp. at 207, leave to appeal denial of dismissal under Rule 25(a) was granted where due to pending appeals by all other defendants on question of qualified immunity, there existed the possibility that the entire case, against all defendants, would end, "saving the time and efforts of all."  Courts often hold that dismissal of one of several causes of action asserted in a complaint would advance the ultimate termination of the litigation—by reducing the time for trial, see F.T.C. v. Wyndham Worldwide Corp., 10 F. Supp. 3d 602, 635 (D.N.J. 2014), aff'd, 799 F.3d 236 (3d Cir. 2015) (reversal would result in dismissal of one of two counts and "any dispositive motions or a trial would only focus on the [plaintiff's other] count"), an outcome that would not obtain here.  Moreover, in Flo & Eddie, Inc v. Sirius XM Radio Inc., No. 13 CIV. 5784 CM, 2015 WL 585641, at *3 (S.D.N.Y. Feb. 10, 2015), also cited by Currier, the court held that the third prong had been satisfied not because only a portion of the lawsuit would be dismissed or that one of several defendants would be dismissed; rather, reversal of the order could end the law suit "immediately."  Id. at *3; see also Klinghoffer, 921 F.2d at 24 (reversal of order would result in dismissal of direct and third-party actions commenced against the Palestine Liberation Organization).  Finally, in Zakrzewska v. The New Sch., 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009), the court certified a question for interlocutory appeal with little analysis, and to the extent read to contradict the authority above, departs from the purposes underlying the prerequisite, and the above-cited authority should be followed.

Capital, LLC, 2015 WL 5729702, at *4; see also Adelphia Commc'ns Corp., 333 B.R. at 658 (in addition to establishing the three section 1292(b) factors, "leave to appeal is warranted only when the movant demonstrates the existence of 'exceptional circumstances'").[15]   Citing the "general aversion to piecemeal litigation," courts within the Second Circuit have explained that this additional requirement is necessary to "show that the circumstances warrant 'a departure from the basic policy of postponing appellate review until after entry of a final judgment.'"  See Worldcom, Inc., 2003 WL 21498904, at *10 (citations omitted); Residential Capital, LLC, 2015 WL 5729702, at *4 (same). [16]  Currier cannot do so here.

Conceding the "historic federal policy against piecemeal appeals," Currier argues that extraordinary circumstances nevertheless justify interlocutory review.  See Currier at 1-2.  Citing the lengthy period between the filing of defendants' motions to dismiss and the Bankruptcy Court's rulings issued last month, Currier complains of the "burdens" born by Floor's legatees. See id.  at 1-2, 25-26.  Currier's argument is not well-taken.

First, Rule 25 "was not intended to act as a bar to otherwise meritorious actions," but was instead intended to prevent prejudice to an estate resulting from confusion or uncertainty as to whether a party intends to continue prosecution of a claim following a death.  See Staggers, 359

[15] This requirement reflects practical considerations relating to reducing time to trial or time for trial.  See In re Hawker Beechcraft, Inc., No. 12-11873, 2013 WL 6673607, at *5 (S.D.N.Y. Dec. 18, 2013) (interlocutory review appropriate only where review "promises to advance the time to trial or to shorten the time required for trial"); Fed. Hous. Fin. Agency v. UBS Americas, Inc., 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012), aff'd, 712 F.3d 136 (2d Cir. 2013) (movant must show that an interlocutory appeal "would avoid protracted litigation").

[16] Citing Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp., No. 02 CIV. 6274 (GBD), 2003 WL 22327118, at *2 (S.D.N.Y. Oct. 10, 2003), Currier appears to argue that a court may ignore the Section 1292(b) factors so long as there are "exceptional circumstances."  Currier at 10.  In Mirant, however, the court, in determining to grant leave, noted that neither debtor nor the creditors' committee objected to interlocutory appeal, and the U.S. Trustee waived the right to make any such objection.  Mirant, 2003 WL 22327118, at *2.  As the authority above shows, exceptional circumstances is a required showing for interlocutory review, not a means of evading the threshold Section 1292(b) prerequisites.

23

F.2d at 296; <u>Saylor v. Bastedo</u>, 623 F.2d 230, 237 (2d Cir. 1980).[17]   Here, there was no such uncertainty, as Currier and her counsel were well-aware that the claims would continue to be prosecuted.   Indeed, Currier and her counsel tracked the claims' progress with sufficient diligence to carry out their hide-the-ball strategy.   Attempting to now use Rule 25 to escape substantive adjudication upends the Rule's purpose and smacks of bad faith.

<u>Second</u>, if Currier had any uncertainty about the status of her substitution, that was a situation of her own making.   Had it been her position that her substitution could not be achieved on consent by naming the "Legal Representative of the Estate of Richard Floor" in the Amended Complaint, it was incumbent upon her to have withheld such consent.   Had she done so, whatever purported uncertainty existed for her or Floor's legatees could have been resolved years ago, rather than being caught up in the wave of motions to dismiss decided just last month.

<u>Third</u>, Currier's complaint that Floor's legatees have not been released yet is at bottom based upon the assumption that Floor did not engage in conduct giving rise to liability.   While in light of the factual record, the Trustee finds Currier's position to be absurd, it is sufficient to observe for present purposes that Currier's liability has not yet been adjudicated.

<u>Fourth</u>, Currier's citation to coverage litigation with Floor's D&O insurance carrier, <u>see</u> Currier at 1, 26, was not raised by Floor with the Bankruptcy Court, and Floor's discussion of the status of such foreign coverage litigation is both improper and baffling, as Floor had not even disclosed to the Trustee the fact and status of such proceeding, and when deposed, did not identify the pendency of such dispute, though her defense costs were being paid by the carrier.

---

[17] That is why, "[n]otwithstanding the mandatory language in Rule 25(a), the district court has considerable discretion in addressing the timing of substitution in the event of the death of a party." <u>Thebaud</u>, 258 F.R.D. at 208.

Ultimately, Currier is the executor of the estate of an individual who approved a transaction based upon falsified earnings projections, leading to a creditor calamity of historic magnitude.  She, along with her former colleagues at Goodwin Procter, pursued a hide-the-ball approach in an attempt to avoid her substitution under Rule 25, drawing well-deserved criticism from the Bankruptcy Court and creating a wasteful sideshow that she could have avoided simply by being forthright.  That her gambit failed to secure an unjustified windfall for Mr. Floor's legatees does not now entitle her to interlocutory review.  Her Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Motion be denied.

Dated:  New York, New York
           February 9, 2016

Respectfully submitted,

EDWARD S. WEISFELNER, AS LITIGATION
TRUSTEE OF THE LB LITIGATION TRUST

By:   /s/ Sigmund S. Wissner-Gross
       Sigmund S. Wissner-Gross
       May Orenstein
       Marek P. Krzyzowski
       BROWN RUDNICK LLP
       Seven Times Square
       New York, NY 10036
       (212) 209-4800

       Steven D. Pohl
       BROWN RUDNICK LLP
       One Financial Center
       Boston, MA 02111
       (617) 856-8200

       *Counsel for Edward S. Weisfelner, as Litigation*
                          *Trustee of the LB Litigation Trust*